581 F.2d 1056
 6 O.S.H. Cas.(BNA) 1892, 1978 O.S.H.D. (CCH) P 22,947
OTIS ELEVATOR COMPANY, Petitioner,
v.
OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and Ray
Marshall, Secretary of Labor, Respondents.
 No. 1002, Docket 78-4028.
 United States Court of Appeals,
Second Circuit.
 Argued May 24, 1978.
Decided Aug. 16, 1978.
 
 Thomas J. Manley, Richmond, Va. (Hunton & Williams, James A. Harper, Jr., Richmond, Va., of counsel), Richard S. Meyer, Dilworth, Paxson, Kalish, Levy & Kauffman, Philadelphia, Pa. and Martin Kaminsky, New York City, Pollack & Kaminsky, New York City, on brief, for petitioner.
 Lorelei J. Borland, Atty., U. S. Dept. of Labor, Washington, D. C., Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, Allen H. Feldman, Acting Counsel for App. Litigation, Washington, D. C., Marshall Harris, Regional Sol., U. S. Dept. of Labor, Philadelphia, Pa., for respondents.
 
 
 1
 Before OAKES, Circuit Judge, and BLUMENFELD* and MEHRTENS,** District Judges.
 
 BLUMENFELD, District Judge:
 
 2
 This is a petition by Otis Elevator Company to review an order of the Occupational Safety and Health Review Commission[1] which found the petitioner to have committed a serious violation of 29 C.F.R. § 1926.28(a). The regulation provides:
 
 
 3
 "The employer is responsible for requiring the wearing of appropriate personal protective equipment in all operations where there is an exposure to hazardous conditions or where this part indicates the need for using such equipment to reduce the hazards to the employees."
 
 
 4
 We find substantial evidence in the record to support the Commission's findings.
 
 
 5
 Otis Elevator Company is a corporation engaged in the business of furnishing and installing elevators in buildings, along with related operating equipment. In the fall of 1976 it employed approximately fifteen craftsmen to install elevators in a Federal Reserve Bank Building project in Richmond, Virginia. On October 19, three of those employees were assembling a car frame in shaft # 13 at the plaza level of the building 60 feet above the bottom of the shaft. Guard rails around the shaft had been removed in order to facilitate the job. One of the men, Elliot B. Weaver, Jr., crouched down to pick up some bolts from the floor of the platform as he resumed work following a lunch break. The bolts had been "pitched" to him by his father, the foreman of the crew. While crouching down, Weaver accidentally fell into the shaft. Although he was wearing a safety belt at the time of the accident, it was not then tied to a safety line. Consequently he fell to the bottom of the shaft. That accident triggered the investigation which led to the citation of the petitioner.
 
 
 6
 The record establishes that in doing their job the Otis employees worked in the shafts and on the platforms which came up to the edge of the shaftways. There was substantial evidence that in doing some parts of the assembly work within the shaft and near the edge of the shaft, some employees frequently did not tie off their safety belts to a safety line.[2] The accident victim and another employee testified that they often did not tie off their safety belts when working near the edge of the shaft. There was also substantial evidence in the record that the company knew or should have known of its employees' failure to tie off. At no time did the company instruct its employees as to when, and why, it was necessary to tie off to life lines. The company had a rule requiring employees to tie off in dangerous situations, but it did not take steps to educate its employees as to which situations were covered by that rule. It was left to the discretion of each employee to decide for himself when to tie off. No disciplinary action was taken by the company, before or after this accident, against any employee who did not tie off.
 
 
 7
 The petitioner's first contention is that the hearing examiner erred by finding a violation of 29 C.F.R. § 1926.28(a) at times and places other than those charged in the citation. The investigation in this case was triggered by the accident to Weaver, Jr., which occurred on October 19, 1976. The original citation issued on November 23, 1976 alleged that the petitioner had violated the regulations "on or about the day the inspection was made . . . " and listed the inspection date as "October 20-November 16, 1976." Later, the Secretary sought to amend the citation to read, "The violations charged are alleged to have taken place on October 19 and 20, 1977, and during the 30 day period immediately prior thereto." The petitioner objected, and the amendment was disallowed.
 
 
 8
 The petitioner argues that the hearing examiner should have confined his attention to the Weaver accident on October 19, because only that occurrence was a proper subject of the citation. The citation did not mention Weaver's accident, but referred to the employer's failure to require employees working in the area of shaft # 13 to wear appropriate protective equipment. It was not limited to one day as petitioner contends, but to a period "on or about" the time of the inspection, which stretched over a period of 27 days. No amendment to the citation was required to give adequate notice that the employer's general safety practices, and not merely the causes of a single accident, were at issue.[3]
 
 
 9
 Petitioner asserts that no violation could properly be found in this case for three additional reasons. First, it argues that there was no basis for concluding that there was a "recognized hazard" to employee safety. Second, the examiner found that safety belts were "worn at all times" and that employees "normally tied off." Third, the circumstances of the action in question " are not known."
 
 
 10
 We disentangle these jumbled contentions in reverse order as best we can. The victim who fell in the shaft could not recall what happened to him,[4] but it is still clear that he could not have fallen all the way to the bottom of the shaft had his safety belt been tied off to a safety line. Furthermore, the issue raised by the citation was not how this accident occurred, but whether petitioner fulfilled its responsibility to require its employees to wear protective equipment when exposed to hazardous conditions.
 
 
 11
 To argue that there has been no violation because safety belts are "worn at all times" and are "normally tied off" emasculates the regulation: "The Employer is responsible For Requiring the wearing of appropriate personal protective equipment in All operations where there is an exposure to hazardous conditions. . . ." That employees "normally" tie off is simply not enough.
 
 
 12
 It is paradoxical for Otis to argue that its elevator assembly employees were not exposed to a "recognized hazard." The company's own rule concerning safety belts, published in its Field Safety Standards Handbook, states:
 
 
 13
 "Unless some other means of protection is provided, safety belts shall be worn, and tied off, when working in any area where there is danger of falling more than four feet." App. 127.
 
 
 14
 Furthermore, it is implicit from the company rule that "personal protective equipment" in the regulation includes life lines. It is obvious that simply wearing a safety belt cannot provide any protection against falling to the bottom of a 60-foot shaft like # 13.
 
 
 15
 Leaving the decision to the discretion of the employee is not sufficient compliance with the regulation. As the legislative history shows,
 
 
 16
 "(a)n employer has a duty to prevent and suppress hazardous conduct by employees, and this duty is not qualified by such common law doctrines as assumption of risk, contributory negligence, or comparative negligence.
 
 
 17
 " 'The committee does not intend the employee-duty (to comply with the occupational safety and health standards promulgated under the Act) provided in section 5(b) to diminish in anyway (Sic ) the employer's compliance responsibilities or his responsibility to assure compliance by his own employees. Final responsibility for compliance with the requirements of this act remains with the employer.'
 
 
 18
 S.Rep. No. 91-1282, (91st Cong., 2d Sess.) 10-11, (Reprinted in ) (1970) U.S.Code Cong. & Ad.News (5177,) 5187."
 
 
 19
 National Realty & Construction Co. v. OSHRC, 160 U.S.App.D.C. 133, 142, 489 F.2d 1257, 1266 n. 36 (1973).
 
 
 20
 The petitioner's reliance on this court's decision in General Electric Co. v. OSHRC, 540 F.2d 67 (2d Cir. 1976), is misplaced. In that case the employer was cited for "failure to provide" safety glasses to two employees. Since there was no evidence to support that allegation, the court set aside the finding of a violation. The court expressly refused to decide whether the employer's "duty to provide" safety glasses, standing alone, would implicitly include a duty to require that employees use them for their protection. Id., 540 F.2d at 69. The General Electric court in dictum equated the regulation before it to a general duty standard resting "not on the specific terms of a standard expressly designed to govern employer obligations but solely on the generalized inference from the present (duty to provide) eye protection standard . . . ." Id. The standard in this case is a specific one, promulgated under § 5(a)(2) of the Act, 29 U.S.C. § 654(a)(2).[5]
 
 
 21
 In finding that Otis violated the regulation the correct standard was applied. On review of the decision and order of the Occupational Safety and Health Review Commission we reject the challenges raised concerning the decision. And, since we find the decision and order of the Commission to be supported by substantial evidence based on the record as a whole, the order of the Commission is affirmed.
 
 
 
 *
 Senior United States District Judge for the District of Connecticut, sitting by designation
 
 
 **
 Senior United States District Judge for the Southern District of Florida, sitting by designation
 
 
 [1]
 The citation for the violation was duly contested by Otis, and the decision of the hearing examiner became the final order of the Occupational Safety and Health Review Commission by operation of law when review was not directed within 30 days after his formal report. 29 U.S.C. § 661(i)
 
 
 [2]
 If tied to a life line, the wearer of a safety belt could not fall more than a few feet and thus would not be injured
 
 
 [3]
 Even if administrative pleadings were not construed liberally which they are, See National Realty & Constr'n Co. v. OSHRC, 160 U.S.App.D.C. 133, 140, 489 F.2d 1257, 1264 (1973) there was nothing resembling a variance here. When the Administrative Law Judge denied the Secretary's motion to amend to enlarge the time period in which the violation was charged, he observed that evidence of what had occurred before the time specified might be admissible. Evidence of conduct of employees and of the petitioner's knowledge thereof before the time period when the regulation was allegedly violated would be sufficiently relevant to warrant its admission. Chitty's rules, which required minute particularization in pleadings, are a legal anachronism
 
 
 [4]
 The finding recites that "he was 'getting in position' to go back into the elevator shaft to do some work. He reached down and picked up some bolts about two feet from the edge of the shaft which was not guarded, and put them in his pocket. He turned around and the next thing he remembers was waking up in the hospital." App. 17. No one else saw how the accident happened
 
 
 [5]
 Under the Act duties upon the employer arise from two sources. Section 5(a) provides:
 "Each employer
 (1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees;
 (2) shall comply with occupational safety and health standards promulgated under this chapter."
 Paragraph (1) concerns a general duty that exists where no specific standard has been promulgated. See National Realty & Constr'n Co. v. OSHRC, 160 U.S.App.D.C. 133 at 137, 489 F.2d 1257 at 1261.