Ray MARSHALL

v.

POOL OFFSHORE COMPANY.

Civ. A. Nos. 781280, 781281.

United States District Court,
W.D. Louisiana,
Lafayette Division.

March 23, 1979.

Max A. Wernick, U. S. Dept. of Labor, Dallas, Tex., for plaintiff.

Ronald A. Johnson, Johnson & McAlpine, New Orleans, La., for defendant.

## MEMORANDUM OPINION

PUTNAM, Senior District Judge.

These cases are before the Court on appeal from orders of the United States Magistrate at Lafayette, Louisiana, Honorable J. Byron Hebert, directing appellant, Pool Offshore Drilling Company, to permit entry of representatives of the Occupational Safety and Health Administration upon two of its worksites in the Gulf of Mexico on the outer continental shelf. The orders issued upon the petition of the Secretary of Labor to enforce two administrative inspection warrants issued on August 9, 1978, which Pool refused to honor. The cases have been consolidated for this appeal.

The affidavits filed to obtain the warrants in each case follow the same format but are for different accidents. Both state that employees of Pool had been killed in the course of their work at these locations, and that a total of five employees had been killed on offshore drilling platforms or rigs operated by Pool in the preceding nine months; that Pool is engaged in a business affecting commerce and is subject to the provisions of the Occupational Safety and Health Act, 29 U.S.C. § 651, 29 U.S.C.A. § 651, et seq. (OSHA), and the desired inspection in each case is to "assure compliance with the Act." [1]

---

1. In case No. 781281, the affidavit alleges that two employees were killed on July 24, 1978, on an offshore drilling platform when the hydraulic clutch on the drawworks of the drilling rig exploded, these being the fourth and fifth fatalities occurring on Pool platforms. This occurred on Rig No. 425, Vermilion Block No. 325, approximately 120 miles southeast of Cameron, Louisiana. In No. 781280, the allegation is that another employee was killed while unloading drill pipe from a vessel at Pool Rig 421, South Marsh Island Block 108. This death is alleged to be the third fatality arising out of Pool's activities on the shelf. Details of the other two deaths are not supplied.

The OSHA representative, James M. Burch, does not point to any specific violation of the regulations promulgated by the Secretary, nor to any reasonable legislative or administrative standards derived from neutral sources, for conducting an inspection of Pool's two worksites in the affidavits forming the bases for the warrants.

The first time that Mr. Burch mentioned the administrative procedure set out in the Operations Manual for inspection arising out of a fatality was at the hearing to compel compliance with the warrants, when he testified that compliance officers were directed by its provisions to investigate deaths resulting from industrial accidents whenever they occurred.

## I. *Jurisdiction*

Appellant Pool has filed a motion to dismiss the Secretary's petition to compel entry pursuant to the warrants for lack of jurisdiction over the subject matter, basing its motion on the recent decision of the United States Court of Appeals, Fifth Circuit, in *Marshall v. Gibson's Products Inc. of Plano,* 584 F.2d 668 (1978).

In that case the issue of subject matter jurisdiction was raised for the first time on appeal; the Court held that OSHA does *not* confer jurisdiction upon the district courts over an action for injunctive relief by the Secretary to compel entry on premises for purposes of inspection.[2]

Further, the Court was unable to find support for the Secretary's position in statutes of general jurisdiction, particularly 28 U.S.C. § 1337 and § 1345.

The Court in *Marshall v. Gibson's Products Inc. of Plano,* supra, was careful to note that the equitable principles applying to injunctive relief are inapposite to proceedings for a search warrant, and did not decide whether or not this fact is itself sufficient to distinguish the jurisdictional considerations in *Plano* from a proceeding for a warrant. See: Note 6, 584 F.2d 668 at p. 673. It is this question we must now resolve, in light of the Supreme Court's decision in *Marshall v. Barlow's Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978).

In that case, the Secretary applied for and obtained an order from the district court compelling Mr. Barlow to admit an inspector to his premises for the purpose of making an inspection pursuant to Sec. 8(a) of OSHA, 29 U.S.C. § 657(a), 29 U.S.C.A. § 657(a). There as here, no violation had been charged against the employer. The question of the constitutionality of a warrantless search of Barlow's Inc. was raised by Barlow's application for injunctive and declaratory relief in the district court, filed in a separate action and not on the Secretary's application to compel entry. The precise question decided by the *Plano* Court, supra, was not considered.

The Court held that if construed to authorize warrantless searches or inspections, Sec. 8(a) would indeed be unconstitutional and violative of Fourth Amendment guarantees, citing *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) and *See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). The case has been generally read to mean that although Sec. 8(a) is unconstitutional insofar as it purports to authorize warrantless searches, the Secretary may still exercise the inspection authority conferred thereby if he follows procedures that satisfy the Fourth Amendment, 436 U.S. 307 at 325, n. 23, 98 S.Ct. 1816 at 1827, n. 23, 56 L.Ed.2d 305 at 319, n. 23; See *Blocksom & Co. v. Marshall,* 582 F.2d 1122, pp. 1124, 1125 (7 Cir. 1978); *Marshall v. Chromalloy American Corporation* (7 Cir. 1979), 589 F.2d 1335; *Weyerhaeuser Co. v. Marshall,* 452 F.Supp. 1375 (E.D.Wis.1978); *Empire Steel Mfg. Co. v. Marshall,* 437 F.Supp. 873 (D.Mont.1977).

---

**2.** The case of *Marshall v. Chromalloy American Corporation,* 589 F.2d 1335 (7 Cir. 1979) declines to follow the *Plano* case, and appears to have adopted the dissenting opinion of Judge Tuttle by reference. With this split of authority in the circuits, this question should shortly be resolved by the Supreme Court.

We conclude that following Barlow's teachings, the Secretary properly applied to the Magistrate for warrants, which were issued and over which we have jurisdiction. We do not agree with the Secretary or the Magistrate that the defendant Pool cannot now move to quash the administrative warrants so obtained. If our warrant was issued without probable cause, certainly we have authority to hear any objections to it before the search is executed. Cf. *Blocksom & Co. v. Marshall,* supra, *Weyerhaeuser Co. v. Marshall,* 452 F.Supp. 1375, at 1377 (E.D.Wis.1978) and cases therein cited. Pool's motion to dismiss for lack of jurisdiction over the subject matter is denied. The proceeding before us is not an application for an injunction to compel Pool to allow entry to its property. It is a petition for the defendant to show cause why the warrants issued by the court, through its Magistrate, should not be enforced, and for any necessary coercive sanctions to insure compliance therewith. Regardless of the title applied to the petition by the Secretary,[3] we treat it as a proceeding for civil contempt.

## II. *Validity of the Warrants*

In order to determine whether or not the order of the Magistrate issued September 27, 1978, directing Pool to permit entry onto the two worksites in question ". . . as directed by the warrants issued by this court on August 9, 1978. . ." is valid, we must first determine whether or not the compliance officer, James Burch, demonstrated probable cause to obtain those warrants. The standards applying to administrative warrants of this type have been spelled out by *Barlow's Inc.,* supra. The Court stated:

"For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that 'reasonable legislative or administrative standards for conducting an . . . . inspec-

tion are satisfied with respect to a particular [establishment].'" (436 U.S. 307, at 320, 98 S.Ct. 1816, at 1824, 56 L.Ed.2d 305)

Looking to the affidavits filed by the compliance officer at the time of his application, they fail to state any specific evidence of an existing violation, nor do they set forth any facts from which we may conclude that the inspection is required by a reasonable legislative or administrative standard. There is no probable cause shown under *Barlow's* test. Perhaps this deficiency can be supplied by the Operations Manual to which Mr. Burch referred during the course of the hearing (Tr. p. 55). He did not have the manual with him at the hearing and it is not otherwise available to us. If, as he states, the compliance officers of the department are required to investigate and/or inspect whenever a death occurs the alternative to the "specific violation" route, i. e., an inspection required by administrative standard, might very well be fulfilled.

Considering the testimony in the record, we cannot say that the Magistrate's finding of probable cause following the hearing on September 27, is clearly erroneous. The order he issued on that date directing that the warrants be executed forthwith and that Pool permit entry for that purpose is the first order based upon sufficient probable cause. This being the case, Pool cannot be found in civil contempt for refusing to honor the earlier warrants, which we find were improvidently issued.

But this gives small comfort to the Secretary. The "boiler plate" forms employed in this case are far too broad and exceed both statutory and regulatory limitations. Each warrant grants authority ". . . to review records required by Title 29, United States Code, Section 657(c) and regulations promulgated pursuant thereto, and to review other records which are directly related to the purposes of the

---

**3.** "Petition for Order for Entry [sic] Inspection and Investigations under the Occupational Safety and Health Act of 1970."

inspection, all as authorized by the provisions of 29 U.S.C. Section 657 and regulations . . . ." The Court in *Barlow's Inc.,* supra, addressed this very point. See, 436 U.S. 307, at page 324, 98 S.Ct. 1816, at page 1826, n. 22, 56 L.Ed.2d 305. The language contained in the warrants tracks the Secretary's regulation, 29 C.F.R. § 1903.3, which is overly broad. The compliance officer is also empowered to question any employer found on the rig, together with other named persons, and to inspect all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials thereon. In our view, to comply with the standards set by the Court, much more specificity regarding the records desired is required, the inspection should be limited to Pool and its employees and equipment, and no other employer who might be on the platform at the time or that employer's equipment should be subjected to the inspection unless named in the document.[4]

### III. *The Outer Continental Shelf Lands Act*

In 1978 the Outer Continental Shelf Lands Act (OCSLA), Title 43 U.S.C. § 1331 et seq., 43 U.S.C.A. § 1331 et seq. was amended, with special emphasis applied to Safety Regulations governing oil and gas operations thereon. OSHA, on the other hand, states that it applies to employment performed in a workplace located on outer continental shelf lands defined in OCSLA. 29 U.S.C. § 653(a); 29 U.S.C.A. § 653(a). The definition of outer continental shelf lands was changed to include all artificial islands and all installations and other devices *permanently* or *temporarily* attached to the seabed and used for the production of natural resources therefrom. The Secretary of the Department in which the Coast Guard is operating is charged with the responsibility to promulgate and enforce regulations or standards "applying to unregulated hazardous working conditions related to activities on the outer continental shelf . . . ." 43 U.S.C. § 1347(c), 43 U.S.C.A. § 1347(c). Enforcement of the regulations promulgated under § 1347 is specifically delegated to the Secretary of the Interior, The Secretary of Transportation (Coast Guard) and the Secretary of the Army, in § 1348. These departments may confer with and enlist the aid of other departments, such as OSHA.

Title 43 U.S.C. § 1348(d)(2), 43 U.S.C.A. § 1348(d)(2), expressly requires the Coast Guard to make an investigation and public report on any death or serious injury occurring as a result of operations conducted under the Act. Detailed regulations have already been promulgated applying to mobile offshore drilling units. Fed.Reg., Vol. 43, No. 233—Monday, Dec. 4, 1978.[5] Although the amendments became effective on September 8, 1978, they were not considered by the Secretary of Labor or Pool when the hearing was held on September 27, and the Magistrate did not have an opportunity to consider the effect they might have on the issues in this case.

It is clear that Congress recognized the maritime nature of these operations; the expertise of the Coast Guard in this area is beyond question. True, 43 U.S.C. § 1347(d) provides that the authority of the Secretary of Labor shall not be affected by the amendments. But with respect to OSHA, 29 U.S.C. § 653(b)(1); 29 U.S.C.A.

---

4. For instance, in No. 781280 the affidavit states that a Pool employee was killed while unloading a vessel. No particular vessel is specified, the work being done fits the definition of longshoring operations as defined in 29 CFR § 1910.16(b)(i), and safety regulations pertaining to the longshoring are set forth in Part 1918 of the regulations. These apply to conditions and methods of handling cargo aboard ship as well as dockside. On the other hand, in No. 781281, the death apparently occurred on the platform, where the general industry standards of 29 CFR Part 1910 would have application.

   The broad grant of authority set out in the warrants is such as to defeat one of the primary purposes of the Fourth Amendment—to apprise the employer of the nature and scope of the investigation, the records to be produced, and to assure him that probable cause therefor has been determined by a neutral official.

5. Coast Guard could make these same regulations applicable to operations on fixed platforms with few changes.

§ 653(b)(1), expressly provides that the Act shall not apply to working conditions of employees with respect to which other federal agencies *exercise* statutory authority to prescribe or enforce standards or regulations affecting occupational safety and health. See *Organized Migrants in Community Action, Inc. v. Brennan,* 172 U.S. App.D.C. 147, 520 F.2d 1161 (1975); *Southern Pacific Transportation Co. v. Usery,* 539 F.2d 386 (5 Cir. 1976).

The development of natural resources on the shelf is one of the primary functions of the Department of the Interior. It is charged with the administration of leasing these lands for development, and specifically with prescribing rules and regulations for the conduct of operations thereon as they relate to the natural and human environment, among other things, and to provide for the suspension or temporary prohibition of any operation, and for the cancellation of any leases or permits for violations of its regulations. See: 43 U.S.C. § 1334; 43 U.S.C.A. § 1334.

Congress has further recognized the hazardous character of the offshore oil industry, and its combination of operations that are normally land-based with maritime activities to supply, sustain and maintain production of these vital resources. The two agencies now given regulatory authority over the shelf under the amendments, the Department of the Interior and the Coast Guard, are undoubtedly in a far superior position to see and recognize these hazards and to provide regulations for their prevention and abatement. They are already trained and staffed for such operations, familiar with the environment, the industry and its equipment, practices and procedures, and can best survey the problem as a whole and provide for it with a minimum of duplication and interference.

On remand the parties and the Magistrate will have an opportunity to develop these issues and to take additional evidence

if necessary.[6] The scope of the warrants must be reconsidered, greater specificity with respect to the records to be inspected provided and the limits of the investigation spelled out.

IT IS ACCORDINGLY ORDERED that the judgment of the Magistrate is hereby reversed, the warrants for inspection in each case are vacated and recalled, and the matter is remanded for further proceedings in keeping herewith.

---

**6.** In this connection the doctrine of exhaustion of administrative remedies may come into play. See *Otis Elevator Co. v. Marshall and OSHRC,* 581 F.2d 1056 (2 Cir. 1978); *Marshall v. North-*west *Airlines, Inc.,* 574 F.2d 119 (2 Cir. 1978); *In re Restland Memorial Park,* 540 F.2d 626 (3 Cir. 1976).