**PUBLIC SERVICE COMPANY OF INDIANA, INC.,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and Douglas M. Costle, Individually and as Administrator of the Environmental Protection Agency.**

No. IP 80–332–C.

United States District Court,
S. D. Indiana,
Indianapolis Division.

Jan. 12, 1981.

Gregory A. Troxell, House Counsel (P.S. C.I.), Plainfield, Ind., Peter J. Rusthoven and Bryan G. Tabler, Barnes, Hickam, Pantzer & Boyd, Indianapolis, Ind., for plaintiff.

Virginia Dill McCarty, U. S. Atty., Charles Blau, Asst. U. S. Atty., Indianapolis, Ind., for defendants.

## MEMORANDUM OF DECISION

NOLAND, District Judge.

This action arises under the provisions of the Clean Air Act, 42 U.S.C. §§ 7401–7626. Plaintiff seeks declaratory and injunctive relief, as well as the return of various documents in the possession of the defendant, in connection with two allegedly unconstitutional and extrastatutory administrative inspections of two of its facilities by representatives of the Environmental Protection Agency (EPA) on January 8 and 9, 1980. The cause came before the Court on June 9, 1980, for argument on plaintiff's request for preliminary injunctive relief, at which time the parties agreed to additionally treat the proceeding as a hearing on the merits so as to facilitate a final decision by the Court. The matter is thus ripe for decision. Plaintiff Public Service Company of Indiana, Inc. (PSI) is a corporation organized and existing under the laws of the State of Indiana, engaged in the generation, transmission, distribution and sale of electric energy. Defendant United States Environmental Protection Agency (EPA) is an agency of the federal government. Defendant Costle is the duly commissioned acting Administrator of the EPA. The Court has jurisdiction over the subject matter herein by virtue of 28 U.S.C. § 1331, 5 U.S.C. § 702, and 28 U.S.C. §§ 2201–02. For the reasons which follow, the Court has concluded that plaintiff is not entitled to injunctive or declaratory relief, and that the challenged actions of the EPA were proper.

## I. FACTUAL BACKGROUND AND CLAIMS

The facts, in summary fashion, are as follows. On March 6, 1979, David Schulz, an environmental engineer and authorized inspector for the EPA, presented his credentials and requested permission to enter and inspect the premises owned by PSI in Gibson County, Indiana, known as Gibson Station. His request was refused, in part because Mr. Schulz declined to sign a "Visitors' Admission Agreement" which included a waiver of liability. On January 7, 1980, the EPA applied for and received an inspection warrant upon the affidavit of Mr. Schulz from U.S. Magistrate J. Patrick Endsley, for the Southern District of Indiana. On January 8, 1980, Mr. Schulz, accompanied by Mr. Dihu, an EPA inspector and visible emissions observer, and a United States Marshal, executed the warrant and conducted an inspection of the Gibson Station facility. On January 9, 1980, PSI moved to quash or modify the inspection warrant and requested a hearing.

Similar events transpired at PSI's Wabash River Generating Station, located near Terre Haute, Indiana. On May 17, 1979, EPA employees Louise Gross and Henry Modetz requested permission to enter and inspect the Wabash River Station. As in the case of the Gibson Station, entry was denied upon the inspectors' refusal to sign the visitors' admission agreement. Upon the affidavit of Ms. Gross and David Shulz, an inspection warrant was issued on January 7, 1980, by Magistrate Endsley, and executed on January 9, 1980, by Mr. Schulz and Mr. Dihu. On January 10, 1980, PSI moved to quash or modify the warrant.

Following a hearing on the two motions on January 18, 1980, Magistrate Endsley issued an order denying PSI's motions and declaring the warrants to be valid and in conformance with Fourth Amendment requirements. He additionally held that EPA inspectors were entitled to photograph plant conditions during an authorized inspection, and that entry of EPA officials upon PSI premises could not be conditioned upon the signing of an indemnity and waiver of liability agreement.

The present action was thereafter filed on April 7, 1980, seeking declaratory and injunctive relief. Specifically, PSI contends and seeks a judgment declaring that (1) Indiana Regulation APC–3 has not been properly approved by the EPA and is therefore not federally enforceable; (2) there was no probable cause for issuance of the warrants; (3) the warrants were not reasonably limited in scope and hence violate the Fourth Amendment; and (4) the warrants cannot properly permit seizure or demand of documents stored at locations other than those to which a particular warrant is directed. PSI additionally seeks to have the Court enjoin future inspections and EPA enforcement actions resulting from information obtained pursuant to the warrants challenged herein, as well as order all documents and photographs obtained in the course of the challenged inspections returned.

## II. DISCUSSION

■ The applications for the warrants forming the basis of the present action set forth the statutory basis for EPA entry upon PSI property and inspection thereof, Section 114(a) of the Clean Air Act, 42 U.S.C. § 7414(a). Section 114(a), in pertinent part, provides:

(1) The Administrator may require any person who owns or operates any emission source or who is subject to any requirement of this chapter . . . to (A) establish and maintain such records, (B) make such reports, (C) install, use, and maintain such monitoring equipment or methods, (D) sample such emissions (in accordance with such methods, at such locations, at such intervals, and in such manner as the Administrator shall prescribe), and (E) provide such other information as he may reasonably require; and

(2) the Administrator or his authorized representative, upon presentation of his credentials—

(A) shall have a right of entry to, upon, or through any premises of such

person or in which any records required to be maintained under paragraph (1) of this section are located, and

(B) may at reasonable times have access to and copy any records, inspect any monitoring equipment or method required under paragraph (1), and sample any emissions which such person is required to sample under paragraph (1).

The statute allows the EPA to require extensive monitoring and reporting of emissions data, and would appear to permit warrantless entry upon regulated premises for purposes of investigating compliance with EPA standards. However, with its decision in *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), the Supreme Court made it clear that a warrant was required, absent consent to entry and inspection, in the face of similar OSHA legislation purporting to allow warrantless entry. It is clear that under the facts and statutes involved in the present action a warrant was equally required, absent consent, prior to entry upon the PSI premises.

■ The level of probable cause required to support an administrative inspection warrant has been the subject of considerable discussion in recent years. It is clear that the probable cause standard for such a warrant is somewhat less stringent than that required in criminal matters. As the court stated in *Barlow's, supra* :

Whether the Secretary proceeds to secure a warrant or other process, with or without prior notice, his entitlement to inspect will not depend on his demonstrating probable cause to believe that conditions in violation of OSHA exist on the premises. Probable cause in the criminal law sense is not required. For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that "reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular [establishment]." *Camara v. Municipal Court,* 387

U.S. 523, at 538, 87 S.Ct. 1727, at 1735, 18 L.Ed.2d 930.

436 U.S. at 320–21, 98 S.Ct. at 1824–1825, quoted in *Burkart Randall Division of Textron, Inc. v. Marshall,* 625 F.2d 1313, 1316 (7th Cir. 1980). *See also See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). Whether an agency inspection is pursuant to a preestablished administrative plan or the result of specific employee complaints is immaterial insofar as the level of probable cause required to support a warrant is concerned. *Burkart, supra; In the Matter of Establishment Inspection of Gilbert & Bennett Mfg. Co.,* 589 F.2d 1335 (7th Cir. 1979), *cert. denied* 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979).

■ Applying the more flexible administrative probable cause standards to the facts of the present case, the Court has concluded that the warrants issued by Magistrate Endsley were adequately supported by the applications and affidavits submitted by the EPA. These documents set forth the agency's broad statutory monitoring and inspection powers, and outlined the bases for the agency's belief that violations of opacity and particulate control provisions were occurring at the Gibson and Wabash River Stations. Specifically, the application pertaining to the Gibson Station stated:

The determination to inspect said premises is generally based on continuous opacity monitoring data, submitted quarterly by Public Service Company of Indiana, Inc. to the Indiana Air Pollution Control Division, which indicates that the Gibson Generating Station exceeded the limits provided by the Indiana State Implementation Plan Regulation APC–3 (visible emissions standards) for 198 of the first 273 days of 1979 (January 1 to September 30, 1979). Continuous opacity monitoring data for the last quarter of 1979 (October 1 to December 31, 1979) will not be available until February of 1980. Access to the Gibson Station is now required to conduct additional tests and inspections to assess the compliance status of the Gibson Station.

Similarly, the application for a warrant for inspection of the Wabash River Station recited concern over violations of APC–3 and APC–4R, which deals with particulate emissions standards. In addition to the continuous monitoring data forming the basis of the suspected violations at Gibson Station, the application recited the results of various stack tests conducted at the Wabash River Station in support of its request for authorization to enter and inspect the premises.

■ Such allegations are clearly sufficient on their face as a basis for issuance of an administrative inspection warrant. A warrant application need not be accompanied by actual documentation of alleged past violations, and a magistrate considering the application is entitled to rely upon the verity of the assertions contained therein. See Marshall v. Milwaukee Boiler Manuf. Co., Inc., 626 F.2d 1339, 1345 (7th Cir. 1980). Plaintiff argues that the actual instances of noncompliance with the opacity and particulate requirements are far less than the figures presented in the applications would indicate, inasmuch as some of these are excused exceedences under the Indiana regulations. However, even assuming the existence of a much smaller number of exceedences, the facts in this case, in the context of Section 114 and the overall purpose of the Clean Air Act, would support the warrants issued. In short, there was sufficient probable cause to justify issuance of the challenged warrants.

■ PSI has additionally challenged the validity of Indiana Regulation APC–3, suspected violation of which constituted the major basis for the entry and inspection, and past violations of which comprised the bulk of the allegations in the warrant applications. APC–3, which deals with visible emissions standards, was submitted to the EPA Administrator in amended form in 1974 for approval as part of Indiana's State Implementation Plan (SIP). In the October 28, 1975 Federal Register, the Administrator approved amended APC–3 with the exception of a provision purporting to allow a 15-minute exemption in each 24-hour period

for emissions in excess of 40% opacity. In the language of the Administrator,

APC–3 must be disapproved to the extent that the 15-minute exemption provision in section 1 fails to meet the requirements of §§ 51.13(e)(1) and 51.19(c).

·        ·        ·        ·        ·

With the exception of the above-noted disapproval actions and material returned to the State or held in abeyance pending further review, the proposed revisions meet the substantive and procedural requirements of Section 110 of the Clean Air Act ... and are hereby approved as revisions to the Indiana Implementation Plan, effective immediately.

40 Fed.Reg. 50,003 (1975). This language leads the Court to conclude that the Administrator did in fact approve, with the minute exception of the 15-minute exemption provision, amended APC–3. Subsequent application of the regulation by state and federal authorities, and the fact that neither the regulators nor those subject to the provisions of APC–3 have seen fit to revise it or to secure a judicial determination of its validity in the period of over five years since its stated approval, lend credence to such a conclusion. APC–3 is thus a valid and enforceable part of Indiana's Implementation Plan. The reluctance of the Court in Bethlehem Steel Corporation v. United States Environmental Protection Agency, 638 F.2d 994 (7th Cir. 1980) to decide this question on the record before it under entirely dissimilar factual circumstances does not influence this result. Accordingly, asserted violations of APC–3 constituted a valid and viable element of the applications underlying the warrants challenged herein.

As to PSI's contention that the warrants violated Fourth Amendment principles by authorizing searches not reasonably limited in scope to the areas pertinent to the violations asserted in the warrant applications, the Court has concluded that the searches conducted exceeded neither statutory nor constitutional limitations.

■ The evidence revealed that Mr. Schulz toured several areas of each generating station in the course of his inspection, including coal storage areas, boilers, stacks, ash disposal systems, and control rooms. Schulz testified that inspection of an entire regulated facility was standard operating procedure for the EPA. The warrants expressly provided for entry into such areas:

> For the purpose of conducting an entry to, upon or through the above described premises during regular working hours or at other reasonable times, and to inspect, test, investigate, sample and photograph, in a reasonable manner and to a reasonable extent, the work place or environment where work is performed by employees of the employer and all pertinent conditions, structures, machines, apparatus, devices, equipment, materials, files, papers, processes, controls, facilities and other things therein, specifically including though not limited to the following: The coal unloading area, coal stockpile, boilers, turbines, control instrumentation, pollution control equipment, stacks, and ash disposal systems.

Contrary to the assertions of the plaintiff, who would limit EPA inspectors to areas housing monitoring equipment in cases such as this, such language does not authorize a "fishing expedition." Rather, reasonably interpreted, the warrants are carefully drawn documents limiting the searches to areas which, according to the testimony of Mr. Schulz, have direct bearing and effect on opacity and particulate levels. The warrants permit entry to search for violations of regulations promulgated pursuant to the Clean Air Act, and although the applications additionally set forth specifically suspected violations of APC–3 or APC–4R, authorize nothing beyond the parameters of Section 114, which allows entry upon any premises subject to the Act for the purpose of seeing that its provisions are carried out. 42 U.S.C. § 7414(a)(2).

The constitutional constraints imposed upon warrants of the type before the Court were set out in *Michigan v. Tyler*, 435 U.S. 449, 501, 98 S.Ct. 1942, 1945, 56 L.Ed.2d 135 (1978), where the Court held that "[t]he magistrate's duty is to assure that the proposed search will be reasonable, a determination that requires inquiry into the need for intrusion on one hand, and the threat of disruption of the occupant on the other." The standard involves balancing the need to search against privacy interests, *Camara, supra*, 387 U.S. at 537, 87 S.Ct. at 1734, and in the context of administrative searches traditionally involves consideration of the language of an agency's enabling statute and the facts of a particular case. The Seventh Circuit enunciated the first of these considerations in *Marshall v. Chromalloy American Corporation*, 589 F.2d 1335 (1979) when it held that the scope of an "inspection warrant must be as broad as the subject matter regulated by the statute and restricted only by the limitations imposed by Congress and the reasonableness requirement of the Fourth Amendment." *Id.* at 1343, *citing Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946).

With these guidelines in mind, the Court has concluded that the warrants for inspection of PSI's Gibson and Wabash River Stations were not overly broad or unreasonably disruptive. The inspection tours necessitated the accompanying of EPA employees by from one to three PSI employees for a period of several hours. The inspections necessitated no plant shutdowns or loss of generating capacity and, unlike the intrusion authorized and held unconstitutionally overbroad in *Marshall v. Pool Offshore Co.*, 467 F.Supp. 978 (W.D.La.1979), involved the plant and facilities of only one employer, PSI. Under these circumstances, and in the context of the broad statutory authority set forth in 42 U.S.C. § 7414(a)(2), the challenged searches must be upheld as constitutional.

■ The remaining issues raised in the complaint may be disposed of in summary fashion. PSI contends that provisions of the Clean Air Act do not authorize EPA investigators to photograph facilities being inspected. No evidence was presented to lend credence to PSI's expressed concern

that the photographs taken by Mr. Schulz would be used to pinpoint and cite PSI for violations in addition to those for which the inspection was originally conducted. Mr. Schulz testified that the photographs were intended merely as an aid to his recollection of the layout and organization of the Gibson and Wabash River Generating Stations insofar as equipment bearing on opacity and particulate requirements was concerned. PSI does not contend that any of the items photographed were secret or classified in nature. Indeed, Section 114(c), 42 U.S.C. § 7414(c), provides for nondisclosure of confidential materials or information gained during administrative inspections upon a claim by a regulated enterprise and a determination by the Administrator that nondisclosure is appropriate. Under the facts of the present case, the photographs taken by Mr. Schulz were not improper.

Finally, the Court need not make a determination in regard to PSI's claim that the inspection warrants issued by the magistrate were improperly utilized by the EPA to secure documents and materials not stored on the premises of the Gibson or Wabash River Stations. The documents requested by Mr. Schulz at the time of the inspections were ones which were obtainable under the Clean Air Act, and which the EPA reasonably believed would be on the premises. More important, however, is the fact that upon request by Mr. Schulz, the manager of the Gibson Station agreed to see that the additional materials were delivered to the EPA. Additionally, the testimony of Mr. Schulz indicated that information in the nature of that submitted to the EPA following his request that it be produced is commonly forwarded to the EPA upon receipt of a letter demanding such material under the provisions of Section 114 of the Clean Air Act. Thus, although the itemized list of requested documents was printed on the back of the search warrants by Mr. Schulz, the agreement by the station management and the fact that the materials are obtainable under Section 114 in the normal course of EPA operations, persuades the Court that under the facts of this case no abuse of the privileges conferred by the warrants occurred in connection with the requested documents. Accordingly, their return to PSI will not be ordered.

## III. CONCLUSIONS

Having reviewed the pleadings, transcript, and evidence presented in this cause, the Court has concluded that defendant EPA did not exceed statutory or constitutional boundaries in connection with the challenged warrants and inspections of PSI's Gibson and Wabash River Generating Stations. The fact that the notice of violation ultimately received by PSI apparently arose out of the continuous monitoring data and other information in the possession of the EPA prior to the inspections, and that no violations of Clean Air provisions were discovered during the challenged inspection tours, is irrelevant to the conclusions reached by the Court with regard to the validity of the warrants themselves. The Court is cognizant of the potential for abuse of the broad statutory authority conferred upon the many regulatory bodies with which modern business and public institutions must contend. Administrative bodies would be wrong to interpret this decision as conferring upon them carte blanche authority to harass or meddle without restriction in the affairs of enterprises subject to their scrutiny. The Court hereby merely holds that under the particular facts and circumstances presented by this case, the boundaries established for the EPA by Congress and the Constitution were not overstepped. Accordingly, plaintiff's request for injunctive and declaratory relief will be denied, and judgment will be entered in favor of the defendant.

The foregoing shall constitute the findings and conclusions of the Court in connection with this matter.