**MOBIL OIL CORPORATION, a corporation, Plaintiff-Appellant,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and Valdus Adamkus, Regional Administrator, Region v. United States Environmental Protection Agency, Defendants-Appellees.**

**No. 83–1047.**

United States Court of Appeals, Seventh Circuit.

Argued April 7, 1983.

Decided Sept. 14, 1983.

Rehearing and Rehearing En Banc Denied Nov. 8, 1983.

Thomas D. Allen, James M. Mulcahy, Elsie E. Singer, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for plaintiff-appellant.

Robert L. Klarquist, Dept. of Justice, Washington, D.C., for defendants-appellees.

Before CUMMINGS, Chief Judge, COFFEY, Circuit Judge, and WEIGEL, Senior District Judge.[*]

CUMMINGS, Chief Judge.

This appeal involves a dispute over the scope of authority the United States Environmental Protection Agency ("EPA") enjoys to sample streams of industrial waste that run from a petroleum refinery into a nearby navigable river.

Plaintiff-appellant Mobil Oil Corporation ("Mobil") operates a petroleum refinery near the Des Plaines River, a navigable river in Illinois. Exercising power delegat-ed to it by the EPA, the Illinois Environmental Protection Agency issued Mobil a permit to dump limited amounts of specified pollutants into that river. Among other things, the permit requires that Mobil monitor the amount of pollutants it dumps into the river by regularly testing samples from the refinery's waste streams "taken at a point representative of discharge" into the river and that it periodically report those test results to the EPA. Because Mobil treats its waste before dumping it into the river, presumably to bring the level of pollutants within the limits prescribed in the permit, the point in the waste streams "representative of discharge" into the river occurs after the waste has been treated.

In April of 1982, one of the EPA's engineers requested Mobil's permission to collect samples of both treated and untreated waste water from waste streams at Mobil's refinery. Mobil granted permission to take samples of its treated waste water but refused permission to take samples of its untreated waste water. Four months later the EPA obtained an administrative warrant to collect the unpermitted samples. Mobil's motion to quash the warrant was denied by a magistrate and Mobil thereupon appealed to the district judge and also filed an action in the district court for a permanent injunction prohibiting the EPA from further executing the warrant and requiring it to return to Mobil the samples already taken and all information gathered therefrom. The district court ultimately dismissed Mobil's suit with prejudice and denied its appeal from the magistrate's ruling on its motion to quash. This appeal followed; for the reasons that follow, we affirm.

■ The EPA claims that Section 308(a) of the Federal Water Pollution Control Act, 33 U.S.C. § 1318(a),[1] authorizes it to sample

---

[*] The Honorable Stanley A. Weigel, Senior District Judge for the Northern District of California, is sitting by designation.

1. Section 308 provides in pertinent part:
 (a) Whenever required to carry out the objective of this chapter, including but not limited to (1) developing or assisting in the development of any effluent limitation, or other limitation, prohibition, or effluent standard, pretreatment standard, or standard of performance under this chapter; (2) determining whether any person is in violation of any such effluent limi-

Mobil's untreated waste water. Of course we must give great deference to an agency's interpretation of the statute which it administers. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616; *Public Service Co. of Indiana v. United States Environmental Protection Agency*, 682 F.2d 626, 632 (7th Cir.1982). Paragraph (a)(B) of that Section gives the EPA administrator, or an authorized representative, a right of entry upon any premises "in which an effluent source is located" and authorizes him to "sample any effluents which the owner or operator of such source is required to sample . . . ." The EPA claims that each waste stream that flows from Mobil's petroleum refinery to the Des Plaines River is effluent both before and after it is treated and that it is the same effluent before it has been treated as it is after. Mobil disagrees. It claims, first, that the term "effluent" refers only to the waste water that ends up in the Des Plaines River and argues that because some of the pollutants in the waste water it treats do not end up in the river, none of its waste water is "effluent" until after it has been treated. Mobil claims second that because treatment alters the composition of waste water, even if a waste water stream is "effluent" before it is treated, it is not the same "effluent" as it is after it is treated. Since Mobil's permit only requires it to sample treated waste water, Mobil argues that the only "effluent" the EPA may sample is treated waste water.

It is not necessary to become expert in the metaphysics of waste water to respond to Mobil's arguments. All that is necessary is to identify what interest Mobil has in preventing the EPA from sampling untreated waste water, what interest the EPA has in getting those samples, and then to inquire whether Congress somehow balanced those interests when it enacted Section 308, or if not, how Congress would likely have balanced them had it undertaken to do so. Mobil of course has an interest in keeping strangers, including EPA officials, off the land on which its refinery is situated. That interest is not at stake here, however, because paragraph (a)(B) of Section 308 (33 U.S.C. § 1318(a)(B)) gives the EPA a right of entry onto that land. (Mobil does not claim that the EPA unreasonably exercised that right in this case.) There is no question that the EPA has a right to enter Mobil's refinery; the only question is once it is there, has it the power to collect samples of untreated waste water? Mobil undoubtedly has an interest in preventing any activity that disrupts the daily operating routine at its refinery, and it is conceivable if unlikely that the collection of waste water samples by EPA officials might occasionally interfere with that routine. But Mobil admits that the EPA has the power to collect samples of its treated waste water and there is no reason to suppose, indeed Mobil does not claim, that sampling of untreated waste water interferes more with operations at its

tation, or other limitation, prohibition or effluent standard, pretreatment standard, or standard of performance; (3) any requirement established under this section; or (4) carrying out sections 305, 311, 402, 404 (relating to State permit programs), and 504 of this Act—
(A) the Administrator shall require the owner or operator of any point source to (i) establish and maintain such records, (ii) make such reports, (iii) install, use, and maintain such monitoring equipment or methods (including where appropriate, biological monitoring methods), (iv) sample such effluents (in accordance with such methods, at such locations, at such intervals, and in such manner as the Administrator shall prescribe), and (v) provide such other information as he may reasonably require; and

(B) the Administrator or his authorized representative, upon presentation of his credentials—
(i) shall have a right of entry to, upon, or through any premises in which an effluent source is located or in which any records required to be maintained under clause (A) of this subsection are located, and
(ii) may at reasonable times have access to and copy any records, inspect any monitoring equipment or method required under clause (A), and sample any effluents which the owner or operator of such source is required to sample under such clause.
The Act is popularly known as the Clean Water Act and will be so termed throughout this opinion.

refinery than does sampling of treated waste water. Moreover, paragraph (a)(B)(ii) of Section 308 gives the EPA power to inspect records Mobil maintains and equipment it uses to monitor the flow of pollutants from its refinery, and it is difficult to imagine how it could be more inconvenient for Mobil to allow EPA officials to inspect its books and equipment than to allow them to sample some of its waste water. See note 1 *supra*. In addition, the preface to Section 308(a) states that the objective of the Act includes "developing or assisting in the development of any effluent limitation, or other limitation, prohibition, or effluent standard, pretreatment standard, or standard of performance" and in order to develop an intelligent effluent limitation for a particular permittee, information is necessary to determine how efficiently the permittee is treating the water, which obviously requires a sample of water both before and after the treatment.

It appears then that the only interest Mobil could possibly have in preventing EPA officials from sampling its untreated waste water is that Mobil might want to keep the EPA in the dark as much as possible about what pollutants are present in the water it dumps into the Des Plaines River and about how efficient its treatment processes are at cleaning its waste water of pollutants. Treatment of waste water may mask the presence of a pollutant. It is easier for the EPA to measure accurately the level of pollutants in waste water after it has been treated if it knows the level of pollutants in that waste water before it has been treated; presumably, it can devise tests more sensitive to those pollutants. And if the EPA is to assess with any reasonable degree of accuracy how efficient Mobil's treatment processes are, it needs to know what pollutants are present in waste water before it is treated as well as after it has been treated.

 Any interest Mobil may have in frustrating the EPA's efforts to assess the efficiency of its treatment processes and to detect trace amounts of toxic pollutants in

waste water it dumps into the Des Plaines River is not entitled to protection. Section 301(a) of the Clean Water Act (33 U.S.C. § 1311(a)) prohibits the discharge by any person of any pollutant into the nation's navigable waters except that which the EPA expressly permits, and Section 101(a)(1) expressly adopts as one of our nation's goals the elimination of the discharge of all water pollutants by the year 1985 (33 U.S.C. § 1251(a)(1)). Policing compliance with EPA pollution standards is critical to the achievement of this ambitious goal, and Section 308(a) eliminates any doubts on that score by expressly authorizing the EPA to check whether someone, such as Mobil, holding a permit to pollute is complying with the pollution limits set forth in its permit. Note 1 *supra*. Sampling waste water both before and after it is treated is an effective, perhaps the most effective, means of doing that. The EPA also has a legitimate need for information regarding the efficiency of waste treatment systems. Section 301(b)(2)(A) of the Act (33 U.S.C. § 1311(b)(2)(A)) requires the EPA to set limits upon the level of water pollution by a permit holder like Mobil such that the permit holder will be required to employ the "best available technology economically achievable ... which will result in reasonable further progress toward the national goal of eliminating the discharge of all pollutants." Information about what pollutants are in Mobil's waste water streams before the streams are treated allows the EPA to meet that obligation. Thus Section 308(a) also expressly authorizes the EPA to collect samples whenever required to develop new permit limits on the discharge of pollutants. These provisions of Section 308(a) leave no doubt that the Congress that enacted that Section was firmly convinced that the interest of permit holders such as Mobil in keeping secret information about the pollutants in its waste water is not entitled to protection. We note finally, for purposes of analogy, that the Clean Air Act contains a section almost identical to Section 308(a)[2] and that last

2. See Section 114 of the Clean Air Act (42 U.S.C. § 7414).

year this Court refused to quash a warrant as broad, if not broader, than the warrant issued in this case. See *Public Service Co. v. United States Environmental Protection Agency,* 682 F.2d 626, 638 (7th Cir.1982), affirming 509 F.Supp. 720 (S.D.Ind.1981), certiorari denied, —— U.S. ——, 103 S.Ct. 762, 74 L.Ed.2d 977.

■ Mobil makes one other attack on the EPA's authority. Mobil suggests that the EPA should have held some sort of public hearing before it obtained a writ to sample Mobil's untreated waste water. Mobil claims that no EPA regulation authorizes the EPA to conduct such sampling, and presumably the point of any hearing in this case would be to obtain public authorization for such sampling. Though we doubt that any form of public authorization is necessary—Section 101(e) of the Act (33 U.S.C. § 1251(e)) provides only that "[p]ublic participation in the development, revision, and enforcement of any regulation, standard, effluent limitation, plan, or program established by the [EPA] Administrator or any State * * * shall be provided for, encouraged, and assisted by the Administrator and the States," and it is doubtful whether sampling of waste water qualifies as a "regulation, standard, effluent limitation, plan, or program"—Mobil is mistaken in its claim. Section 122.7(i)(4) of Title 40 of the Code of Federal Regulations, in effect when Mobil was granted its permit and which no party cited in their briefs or during oral argument,[3] expressly provides that "[t]he permittee shall allow the Director [of the EPA program] * * * to * * * (4) Sample or monitor at reasonable times, for the purposes of assuring permit compliance or as otherwise authorized by the appropriate Act, any substances or parameters at any location." Public comment was solicited before this regulation was adopted and therefore whatever public authorization Mobil seeks was already sought.

Judgment affirmed.

---

3. Mobil did cite 40 C.F.R. § 122.63(i)(2). That provision, however, merely governs the setting of "effluent limitations or standards" upon untreated waste water streams. It does not preclude sampling of untreated waste streams to police compliance with effluent limitations upon treated waste water streams.