626 F.2d 1339
 8 O.S.H. Cas.(BNA) 1923, 1980 O.S.H.D. (CCH) P 24,675
Ray MARSHALL, Secretary of Labor, United States Department
of Labor, Plaintiff-Appellee,
v.
MILWAUKEE BOILER MANUFACTURING COMPANY, INC. and Richard W.
Stevens, President, Defendants-Appellants.
 No. 79-2164.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 2, 1980.
Decided Aug. 4, 1980.
 
 Michael Ash, Godfrey & Kahn, S. C., Milwaukee, Wis., for defendants-appellants.
 Charles I. Hadden, U. S. Dept. of Labor, Washington, D. C., for plaintiff-appellee.
 Before PELL and WOOD, Circuit Judges, and BAKER, District Judge.*
 PELL, Circuit Judge.
 
 
 1
 This appeal is from a district court order holding the appellants, Milwaukee Boiler Manufacturing Company, Inc., and Richard W. Stevens, President, (hereinafter collectively the Company) in contempt for a refusal to comply with an Occupational Safety and Health Administration (OSHA) inspection warrant and denying the Company's motion to quash the warrant.
 
 
 2
 On February 8, 1979 an OSHA compliance officer who appeared at the Company's plant in Milwaukee for the purpose of conducting an inspection was refused entry on the ground that he did not have a warrant. On April 26, 1979, a compliance officer of OSHA appeared before a magistrate in Milwaukee and presented an application for an inspection warrant. Apparently the magistrate declined to issue the requested warrant at the time and the Secretary of Labor (Secretary) requested leave to brief the matter. The status remained unchanged at the time of the death of the magistrate. Subsequently, a hearing was held before another magistrate on September 13, 1979, at which time a warrant was issued. A copy of the pertinent portion of the warrant application is set forth in the margin.[1]
 
 
 3
 Four days later, a compliance officer appeared at the Company with a warrant whereupon the Company again declined to permit the inspection, stating that the warrant was not issued with probable cause therefor. A hearing was held in the district court on October 5, 1979, on the Secretary's petition for a finding of contempt and on the motion of the Company to quash the warrant. The district court, ruling from the bench, granted the Secretary's requested relief and denied that sought by the Company. This appeal followed and this court, after granting a temporary stay, denied the appellants' motion for a stay pending appeal.
 
 
 4
 An initial question appears to us to be presented, being whether this appeal should be disposed of on the ground of mootness. In the ordinary situation involving contempt proceedings, the object of the proceedings is given the uncomfortable choice of waiving his rights or standing firm and suffering the consequences of being in contempt during what may be a protracted period of review. See United States v. Ryan, 402 U.S. 530, 532-33, 91 S.Ct. 1580, 1581-82, 29 L.Ed.2d 85 (1971).
 
 
 5
 Here, however, the Company, after having failed to secure a stay of the order, did permit the inspection which is now a fait accompli. Cf. Federal Trade Commission v. Stroiman, 428 F.2d 808 (8th Cir. 1970). It is well established, however, that an action will not be deemed moot where questions are presented which are "capable of repetition, yet evading review." See, e. g., Roe v. Wade, 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973); Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911). The rationale of cases advancing this ground for nonapplication of the mootness doctrine generally stem from the fact that (1) the plaintiffs have alleged the existence of a federal right; and (2) the right was alleged to be the subject of an existing violation at the time the complaint was filed. That the right would be subjected to future violations was not a matter of speculation or conjecture but was a reasonable expectation because of the existence of a statute or course of conduct of sufficient permanence to amount to what the Supreme Court called the "brooding presence" in Super Tire Engineering Co. v. McCorkle, 416 U.S. 115, 122, 94 S.Ct. 1694, 1698, 40 L.Ed.2d 1 (1974). We have some difficulty here in being certain that there is an element of capability of repetition sufficient to avoid mootness. Nevertheless, we are satisfied for other reasons that this action is not moot and that there is a sufficient case or controversy inherent in the present appeal.
 
 
 6
 We are mindful that the Act's penalty provisions mandate substantial penalties for each serious or nonserious violation and even higher penalties for repeated or willful violations, and also that criminal penalties are provided by the Act. While the present proceedings are civil in nature, there are at least quasi-criminal aspects. This court has held in connection with the concurrent sentencing rule that collateral consequences are presumed to result from any conviction. United States v. Tanner, 471 F.2d 128, 140 (7th Cir. 1972), cert. denied, 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 220. In the civil area of habeas corpus petitions, even where the applicant has been released from custody, the continuing effects of conviction will prevent mootness. Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). Further, we note that the ultimate relief sought in the present proceedings by the Company is to suppress the results of the inspection which has, in fact, been made. The Secretary argues that suppression would be inappropriate even if this court found that there was no basis for the issuance of the warrant. Such an issue, whether ultimately it need be reached or decided in the present case or not, would seem to be an independent case or controversy. Accordingly, we are of the opinion that the action is not moot. Neither of the parties contends otherwise.
 
 
 7
 Subsequent to the Supreme Court's decision in Marshall v. Barlow's, Inc., 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978),[2] this court has had several occasions to consider the sufficiency of warrant applications: In the Matter of Establishment Inspection of Northwest Airlines, Inc., 587 F.2d 12 (7th Cir. 1978); In the Matter of Establishment Inspection of Gilbert & Bennett Manufacturing Co., 589 F.2d 1335 (7th Cir. 1979), cert. denied, 100 S.Ct. 174;[3] Weyerhaeuser v. Marshall, 592 F.2d 373 (7th Cir. 1979).
 
 
 8
 In each of these cases the attention of this court was directed to whether the application for the warrant afforded the magistrate sufficient factual data to conclude that an administrative inspection was reasonable and that a warrant should issue. This, in essence, involved a facial examination of the application. The focus of the Company in the present case is quite different. We do not read the Company's position here as seriously contending that facially the application was deficient. If such were the contention we would have little difficulty in disposing of the present case under Chromalloy as examining the present application in the light of that case causes us to regard it as sufficiently specific to demonstrate a reasonable administrative standard for conducting an inspection with respect to the particular establishment. Indeed, the application is fleshed out with a greater showing of probable cause than was the application in Chromalloy. The Company in the present case, however, directs its focus basically at a claimed deficiency in factual support for the matters included in the application.
 
 
 9
 On the basis of information developed at the hearing before the district court, the Company asserts that in a number of respects the application conveyed false information to the magistrate. We, therefore, now turn to those specifications of falsity setting forth each in the order contained in the Company's brief. We also set forth the Secretary's response to each such item.
 
 
 10
 (1) The warrant application alleged that the Company was selected "in accordance with Chapter IV, entitled Compliance Programming, of the Occupational Safety and Health Administration Field Operations Manual." The pertinent part of Chapter IV was introduced in evidence and under the heading of "Program Planning" it was stated that the primary consideration in conducting compliance operations was the attainment of maximum effective inspection coverage. This statement then followed, "To achieve this goal, this chapter of the Field Operations Manual (FOM) and the Field Performance Evaluation Manual (FPEM) are to be used together for scheduling compliance operations." The FPEM was not shown to the magistrate, and in contradiction to the sworn warrant application there was testimony that the FPEM was not even in existence when the decision was made to inspect, and that, in fact, there was no reliance on the FPEM.
 
 
 11
 The Secretary, for answer to this specification, admits that the FPEM had been revoked before the decision to inspect was made, but characterizes the contention as meritless since the warrant application set forth the actual manner in which the Company was chosen for inspection, so that the reference to Chapter IV of the FOM could be struck from the application and sufficient probable cause would still exist to justify issuance of the warrant.
 
 
 12
 (2) The application referred to injury and accident statistics compiled by the Bureau of Labor Statistics (BLS) to the effect that the fabricated plate work industry had the seventh highest injury rate in the Milwaukee area. A staff member of OSHA, called as a witness by the Company, testified that the BLS does not break down injury rates lower than statewide, and the injury rate specified in the application for the Milwaukee area would not be applicable to Milwaukee unless Milwaukee was typical of Wisconsin, and that no one at OSHA knew what ranking the fabricated plate work industry has in the Milwaukee area.
 
 
 13
 The Secretary replied to this contention that the same supervisor had also testified at the hearing that the statistics from BLS which cover the entire state "are simply broken down further to obtain a relative ranking for those industries in the Milwaukee area," and that therefore the warrant application on this point was not false or misleading.[4]
 
 
 14
 The Secretary also responds that there was no allegation in the application "to the effect that the BLS actually provided injury statistics specifically for the Milwaukee area." The exact quotation, however, in the application was as follows:
 
 
 15
 The fabricated plate work industry according to the Bureau of Labor Statistics has the seventh highest injury rate in the Milwaukee area.
 
 
 16
 (3) The Company asserts that whatever ranking of hazardous industries in the area OSHA does engage in could not find the fabricated plate work industry ranking seventh because several more dangerous industries are excluded such as the construction, maritime, and roofing industries.
 
 
 17
 The Secretary concedes that these industries are excluded but that the warrant application did not thereby become false or the administrative selection plan unreasonable because, as the OSHA employee explained, construction and therefore presumably roofing are treated separately since they are not manufacturing industries, which were the focus of the Act. The Secretary also states that in any event construction was less hazardous than fabricated plate work and all of the maritime establishments in the area had already been inspected. The actual testimony here was that OSHA had inspected all the maritime establishments in Milwaukee but not all the jobsites. The record does not disclose the relative significance of these two terms.
 
 
 18
 (4) The record is also somewhat less than clear as to what was actually established by testimony as to the next contention. The Company states that the selection of the Company could not have been neutral or unbiased as the establishment list relied upon included less than 15% of the establishments in the geographic area subject to OSHA inspection and excluded at least 75% of those establishments within the Company's own classification of fabricated plate works.
 
 
 19
 The Secretary responds that the testimony shows the reason for the exclusion of other industries as being that the list was meant to include only the most hazardous industries, i. e., those with a hazard value of above 3.0, being not all of the industries in the geographic area.
 
 
 20
 (5) Returning to Chapter IV of the FOM, the Company states that it specifies that the area director is the person authorized to make selections for inspection but the selection decision concededly was made by the safety supervisor who testified.
 
 
 21
 The Secretary makes no specific response to this matter, apparently one of delegation of authority, although presumably the answer to the failure to utilize the FPEM which had been revoked is also applicable here, i. e., in effect, that this is harmless error because if the reference to Chapter IV had been stricken there was still ample probable cause to justify the issuance of the warrant.
 
 
 22
 (6) Although not an attack on the asserted falsity of matters in the application, the Company also contends that certain supporting data was never exhibited to the magistrate. We previously adverted to the fact that the FPEM was not shown. Also, during testimony it was indicated that what was relied upon in selecting the Company for inspection were two documents of OSHA instructions which were designated as exhibits at the hearing, being a "Field Operations Program Plan" and a "Scheduling System for Programmed Inspections." These documents were not shown to the magistrate or referred to in any manner at the magistrate's hearing according to the Company. This assertion is not contravened.
 
 
 23
 The Secretary responds that the defect was not material because, in fact, the warrant application described the exact manner in which the Company was chosen, and, in any event, the Company did not suggest that these documents set forth a different procedure from the one described in the application.
 
 
 24
 The factual support for the foregoing contentions was developed through testimony at a hearing before the district court. When the matter originally came before that court for attention, some oral argument was heard during which the Company outlined generally its position along the lines of the factual matters hereinbefore set out. The Secretary responded and the district court indicated that it was prepared to rule that the application to quash the warrant would be denied. Following this indication, counsel for the Company made a vigorous plea for an opportunity to present evidence which the district court granted with the evidentiary hearing adverted to above then occurring. At the conclusion of oral argument following the evidentiary hearing, the district court adjudged the Company in civil contempt for failing to comply with the warrant. The court recognized that there was a variance between the application and the defendants' version of the facts but regarded those variances as insignificant, opining that whether the selection was because of the seventh highest injury rate in the Milwaukee area or the seventh highest injury rate in Wisconsin, no sufficient basis existed for treating this as a misrepresentation which would deprive the application from being based on probable cause. The court also indicated that the fact that there were other competitive industries which were not considered would not be such a significant misrepresentation as to negate the validity of the warrant. The court found Chromalloy relevant and indicated that at a hearing before a magistrate a company would not be entitled to a plenary evidentiary hearing to examine the minutia and details that supported the Secretary's determination to inspect, as this would defeat the salutary purposes of the Act.
 
 
 25
 While we reach the same result in this case that the district court did, we are not inclined to regard the admitted variances as insignificant. Some of the Secretary's responses in this court are weak and an examination of the application in the light of the admitted variances would indicate either that it was carelessly prepared or was a continuing resort to boiler plate, neither of which speaks well for the bureaucratic process. To some considerable extent, the Secretary's support of the application constitutes less than a pretty example of bureaucratic doubletalk. As this court pointed out in Weyerhaeuser, 592 F.2d at 378, the magistrate's function is more than merely certifying to the target company that the agency is acting in accordance with law. This court declined in that case to strip the magistrate of his probable cause function, "as the very purpose of a warrant is to have the probable cause determination made by a detached judicial officer rather than by a perhaps overzealous law enforcement agency." Id.
 
 
 26
 These applications will often be granted on an ex parte application, although here the Company had the privilege of a hearing before the magistrate. Notwithstanding that "(p)robable cause in the criminal law sense is not required," Barlow's, 436 U.S. at 320, 98 S.Ct. at 1824, there should be presented to the magistrate, when the application is relying upon reasonable legislative or administrative standards for conducting an inspection with regard to the particular establishment, factual matters which are susceptible of being in truth and in fact supported. This was not the case in the several respects enumerated in this case.
 
 
 27
 On the other hand, we cannot agree with the Company that an application need be accompanied by all of the supporting documents, or indeed any of them, upon which the factual assertions of the application are based. The magistrate should be entitled to rely upon the verity of those assertions. As this court pointed out in Chromalloy, 589 F.2d at 1342-43, the agency is not required to make a massive evidentiary showing of particularized cause and a simple warrant request hearing should not be turned into a full-blown hearing. We continue to decline "imposing on the Secretary an unwarranted 'consumption of enforcement energies' which would 'exceed manageable proportions.' " Id. at 1342, quoting Marshall v. Barlow's, Inc., 436 U.S. at 321, 98 S.Ct. at 1825. Nor do we regard the fact that the BLS were not for Milwaukee specifically, but rather for the state of Wisconsin, to be sufficient, even when taken with the other variances, to require us to overturn the issuance of the warrant. This is so even though the evasive, or at least conclusionary testimony, that the state statistics were broken down doesn't really reflect how the agency got from point A to point B.
 
 
 28
 Further, we regard the Secretary's assertion in his brief here that no allegation was set forth in the application to the effect that the BLS actually provided injury statistics specifically for the Milwaukee area as scarcely squaring with the specific statement that the fabricated plate work industry "according to the Bureau of Labor Statistics has the seventh highest injury rate in the Milwaukee area." The Secretary in this respect relies upon this court's statement in Chromalloy, 589 F.2d at 1343, that the magistrate is entitled to rely on the Secretary's expertise in gathering and interpreting statistics. What we are reviewing here, however, is a challenge to the underpinnings of the application developed in an evidentiary hearing at the district court level, and the statement that the state statistics "are simply broken down" might well cause skepticism with regard to the continuing deference to administrative expertise in this area. Nevertheless, bearing in mind that this court is aware of the fact that Milwaukee is by far the largest industrialized area in the state of Wisconsin, we conclude, although not enthusiastically, that the variance is not sufficient for the relief requested here. We have little doubt that if the application had candidly set forth that the BLS statistics were statewide and that Milwaukee was the largest industrial city in the state, the magistrate would have, and properly so, granted the application.
 
 
 29
 The fact remains that ultimately the agency, having inspected six other manufacturing industries having a higher injury rate according to prevailing state statistics, chose for inspection a site in the seventh category, which had not been previously inspected. A further compelling factor in the present situation is that there is a well established body of law that, even if the application was materially incorrect or misleading, the warrant could only be invalidated if the misrepresentations were "intentional or reckless." Franks v. Delaware, 438 U.S. 154, 171-72, 98 S.Ct. 2674, 2684-85, 57 L.Ed.2d 667 (1978); Pelton Casteel, Inc. v. Marshall, 588 F.2d 1182, 1188 n.12 (7th Cir. 1978); United States v. Carmichael, 489 F.2d 983, 989 (7th Cir. 1973) (en banc). The Company has presented no evidence which calls into question the district court's explicit determination that it found no suggestion on the record of an "attempted fraud on the magistrate, let alone upon the Milwaukee Boiler Manufacturing Company."
 
 
 30
 We briefly note two other points raised by the Company. The first of these is the contention that the warrant was invalid because OSHA internal procedures require that the Area Director make the selection for inspection, whereas in this case a safety supervisor in the area office made the decision. We would have little difficulty, as a general proposition, in thinking that while the Area Director might have the ultimate responsibility for the selection this was a delegable function within the agency. In any event, "Area Director" is defined in 29 C.F.R. § 1903.21(e) as including "the employer or officer regularly or temporarily in charge of an area office . . . or any other person or persons who are authorized to act for such employer or officer."
 
 
 31
 Secondly, the Company contends that the district court abused its discretion and denied the Company due process by failing to enforce a subpoena duly issued requiring the presence of the Milwaukee Area Director for testimony and for bringing of certain documents particularly described in the attachment to the subpoena. The Secretary had moved to quash the subpoena but the district court had not ruled upon the motion. When the parties presented themselves at the hearing in the district court, the Company, not having any previous knowledge that the Area Director would not be present, learned that the Area Director was in Manhattan, Kansas, on assignment for the Department of Labor. The Company moved to continue the hearing until such time as the Area Director would be available, which motion was denied. Here again, we find disturbing the apparently cavalier disregard of an unquashed subpoena by the highest official of the agency in the area, and if it had been demonstrated that the absence of this subpoenaed witness was in fact detrimental to the presentation of the Company's case we might well give serious consideration to the contention that there was a denial of due process. Under the circumstances of this case, however, it appears that to the extent that this was error, it was not prejudicial to the Company, as it was able to develop its position through the agency representative who had apparently actually been concerned with the inspection in question. Also, the record indicates that the district court, based on representations of counsel, was aware that this would be the situation.
 
 
 32
 While we are affirming the district court judgment for the reasons we have indicated herein, we trust that we have made clear our belief from this record that OSHA has scarcely functioned in the manner that would be expected from an arm of the United States government. While we are not reversing in this case, we do not say we would continue to affirm if future cases reflected a persistence in failing to be able to support the factual assertions of an application in this type of a case.
 
 
 33
 On this appeal, the Secretary contends that if this court should invalidate the warrant it should not treat the Company's motion to quash the contempt as a motion to suppress evidence obtained during the inspection conducted pursuant to the warrant. The Secretary points out that the Ninth Circuit recently suggested that the exclusionary rule should not apply to OSHA proceedings in view of the fact that the Supreme Court has never applied it to civil proceedings. Todd Shipyards Corp. v. Secretary, 586 F.2d 683, 689 (9th Cir. 1978). The Secretary also recognizes that a contrary result may have been indicated by Knoll Associates, Inc. v. FTC, 397 F.2d 530 (7th Cir. 1968) but suggests that it is unclear that Knoll on that point remains a correct statement of the law. The Secretary also notes that in Weyerhauser, supra, this court suppressed evidence obtained pursuant to an invalid warrant but argues that in that case the Secretary did not raise or litigate the issue of whether the exclusionary rule applied to OSHA proceedings. Not surprisingly, the Company, attempting to draw support from a recent Tenth Circuit case, Savina Home Industries, Inc. v. Secretary, 594 F.2d 1358 (10th Cir. 1979), takes an opposite position on this issue from that taken by the Secretary. Because of the result we are reaching in this case, we leave for another day and another panel the resolution of the issue.
 
 
 34
 Accordingly, the judgment of the district court is affirmed.
 
 
 
 *
 District Judge Harold A. Baker of the Central District of Illinois is sitting by designation
 
 
 [1]
 (T)he desired inspection is part of an inspection and investigation program designed to assure compliance with the Act, is authorized by section 8(a) of the Act, and is based upon injury rates experienced within certain designated industries within a prescribed geographic area
 The above-listed worksite selected for inspection was listed in a document filed with the Department of Labor as an industry engaged in FABRICATED PLATE WORK. Selection criteria for employers to be investigated is predicated upon those industries in a geographic area showing the worst injury rates as being the first to be selected for investigation. The fabricated plate work industry according to the Bureau of Labor Statistics has the seventh highest injury rate in the Milwaukee area. Those six industries having a higher injury rate were previously inspected by the Milwaukee Area Office. Of those industries engaged in fabricated plate work and having the seventh highest injury rate MILWAUKEE BOILER MANUFACTURING COMPANY was chosen because it had no prior inspection history. The above-cited worksite was selected for Inspection for this reason in accordance with Chapter IV, entitled Compliance Programming, of the Occupational Safety and Health Administration Field Operations Manual.
 
 
 [2]
 The Supreme Court there held that the Occupational Safety and Health Act (Act) was unconstitutional insofar as it purported to authorize inspections without a warrant or its equivalent, but that entitlement to inspect would not depend on the demonstration of probable cause to believe that conditions in violation of the Act existed on the premises, probable cause in the criminal sense not being required. But for purposes of such an administrative search as this, probable cause for the issuance of a warrant could be based not only on specific evidence of an existing violation but also on a showing that reasonable legislative or administrative standards for conducting an inspection were satisfied with respect to a particular establishment
 
 
 [3]
 Gilbert & Bennett was consolidated with Marshall v. Chromalloy American Corporation, also 7th Cir., 589 F.2d 1335, and one opinion was issued. Hereinafter we shall refer to Chromalloy as the facts of that case are more applicable to the case under decision than Gilbert & Bennett
 
 
 [4]
 The testimony referred to was developed on cross-examination of the OSHA employee by the Secretary by a process of leading questions. The transcript section upon which the Secretary relies reads as follows:
 Q. And when you get this listing of injuries per one hundred per one hundred employees per year, do you further break that listing down from the statewide when you receive it?
 A. Yes, I do.
 Q. And when you break that further down and use the statistics given to you, isn't it true that you come up with a relative ranking for injuries in the Milwaukee Area?
 A. Yes, sir.
 Q. And isn't it also true that the fabricated plate work with the SIC Code Number 3443 ranks number seventh in the Milwaukee Area on the basis of these statistics?
 A. Yes, on the basis of those statistics.
 Q. And that would be the injury rate. Is that correct?
 A. The incidence rate or injury rate, yes.
 Even though this was on cross-examination, we have some considerable question as to the propriety of, or at least the probative value of, the use of such clearly leading questions to a witness who is tantamount to a party's own witness. There was, however, no objection made to the procedure.