## Richmond

COMMONWEALTH OF VIRGINIA, DEPARTMENT OF LABOR
AND INDUSTRY

v.

## E. A. CLORE SONS, INC.

September 11, 1981.

Record No. 800688.

Present: Harrison, Poff, Thompson, JJ. and Harman, S.J

544

*Leonard Vance, Assistant Attorney General (Marshall Coleman, Attorney General; Walter H. Ryland, Chief Deputy Attor-*

ney General; Karen A. Gould, Assistant Attorney General, on briefs), for appellant.
J. Thomas Province, for appellee.

THOMPSON, J., delivered the opinion of the Court.

In this appeal, we consider whether the trial court erred in holding that consent to an administrative search is always invalid unless the one consenting to the search is informed that, as a result of the search, his company might be cited for violations of administrative regulations.

On February 28, 1979, Alexander Mayes, an employee of the Department of Labor and Industry, arrived at a factory operated by E. A. Clore Sons, Inc. (hereafter, "E.A. Clore"), to conduct an inspection for violations of worker safety regulations. According to testimony produced by E. A. Clore, Mayes introduced himself to Lucian Walter Clore, president of E. A. Clore, showed his credentials, "said he was from OSHA [Occupational Safety and Health Administration] or whatever it is, and . . . said, 'I'd like to look around a little bit today . . . .'" Deciding to "be nice to him," Lucian Clore consented. After getting his camera, Mayes, accompanied by Lucian Clore and John William Clore (vice-president of E. A. Clore), began his inspection. At the end of the inspection, he informed Lucian Clore that E. A. Clore would be cited for violations of safety regulations. Lucian Clore testified that he thought Mayes merely intended to warn him of violations and that he would not have consented to the inspection if he had known E. A. Clore might be cited for violations.

On the other hand, Mayes testified that when he arrived at the factory he informed Lucian Clore of "the nature and purpose of [his] visit" and told Clore the inspection was an "enforcement type of visit." According to Mayes, Lucian Clore told him that his company had been inspected previously by federal OSHA officials, that he was "familiar with this type of inspection," and that the federal inspection had resulted in citations and fines. Mayes acknowledged failing to inform the Clores during the initial conference that E. A. Clore would be cited for any violations of safety regulations. He did, however, point out violations to the Clores during the inspection itself.

On appeal from the district court's dismissal of the Department's complaint against E. A. Clore for violations uncovered by

the inspection, E. A. Clore filed a motion to dismiss in the circuit court on the ground that the inspection was conducted without a warrant and without the consent of E. A. Clore's agents. The circuit court crystallized the issue as being "whether or not [Lucian Clore] had given [Mayes] informed consent." Although not concluding Mayes had intentionally deceived the Clores concerning the nature of his visit, the circuit court held that Mayes was obliged to inform the Clores before the inspection that E.A. Clore would be cited for any violations uncovered by the inspection. The court concluded that, because Mayes had not given the Clores this information, Lucian Clore's consent was not "informed" and hence was invalid. On appeal, the Department contends that the consent to the inspection was voluntary even though Mayes did not inform the Clores that E. A. Clore would be cited for any violations.

E.A. Clore does not contend that any Virginia statute or regulation in effect at the time of the inspection required Mayes to inform Lucian Clore the Department might issue citations.[1] Hence, the only issue before us is whether the state or federal constitutions required Mayes to inform Lucian Clore of the potential consequences of an inspection before obtaining his consent.

In *Schneckloth* v. *Bustamonte,* 412 U.S. 218 (1973), the Supreme Court rejected an "informed consent" argument similar to the one adopted by the circuit court. In *Schneckloth,* a police officer stopped a motor vehicle after observing one of the car's headlights had burned out. When some of the vehicle's occupants were unable to produce identification, the officer asked if he could search the car, to which an occupant relied, "Sure, go ahead." *Id.* at 220. At the time the consent was given, the atmosphere was "congenial" and "there had been no discussion of any crime." *Id.* at 221. Opening the car's trunk with the assistance of another occupant, the police officer discovered stolen checks. The defendant argued the consent to the search was invalid because it was not a

---

[1] The statutes in effect at the time of the search did not impose a warrant requirement. 1972 Acts, c. 602, at 746; 1970 Acts, c. 321, at 441. *See also* 29 U.S.C. § 657(a). Following *Marshall* v. *Barlow's, Inc.,* 436 U.S. 307 (1978), which forbade nonconsensual warrantless searches conducted pursuant to 29 U.S.C. § 657, the General Assembly enacted Code § 40.1-49.8, which authorizes searches "with the consent of the owner, operator, or agent in charge of such workplace" or pursuant to a warrant. 29 C.F.R. § 1903.7(a) requires federal OSHA inspectors to "explain the nature and purpose of the inspection" but does not explicitly require federal inspectors to inform an employer that citations will be issued if the inspectors discover violations of the regulations.

"knowing and intelligent" waiver of a constitutional right. *Id.* at 235-36. *See Johnson* v. *Zerbst,* 304 U.S. 458, 464 (1938). Specifically, the defendant contended that the government, in showing the search was consensual, must demonstrate that those consenting knew they had a constitutional right not to consent.

Rejecting the defendant's argument, the Court held that "[w]hile knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent." 412 U.S. at 227. "Nothing, either in the purposes behind requiring a 'knowing' and 'intelligent' waiver of trial rights, or in the practical application of such a requirement suggests that it ought to be extended to the constitutional guarantee against unreasonable searches and seizures." *Id.* at 241. The Court noted that state and federal courts had "almost universally repudiated" the argument that government agents should be required to advise individuals of their right to withhold consent, *id.* at 231, and held that considerations underlying the Court's decision in *Miranda* v. *Arizona,* 384 U.S. 436 (1966),[2] were "simply inapplicable in the present case." *Id.* at 246. In summary, the Court held that the fruits of a search are admissible where the consent to the search is voluntary, that voluntariness is determined by examining the totality of the circumstances, and that knowledge possessed by one consenting to a search is merely one factor a court should consider in determining the voluntariness of the consent.[3] See also *United States* v. *Mendenhall,* 446 U.S. 544, 557-59 (1980) (search by non-uniformed

---

[2] *Miranda* required that specific warnings be given to individuals prior to custodial interrogation. One of the *Miranda* warnings, that information provided in the interrogation can be used against the individual being interrogated, is somewhat akin to the trial court's requirement that inspectors inform employers that they might be cited for violations of administrative regulations as a result of the inspection.

Lower federal courts have uniformly held that a consent to a search may be voluntary even though the one consenting to the search was not informed that anything found could be used against him. *See, e.g., United States* v. *Lemon,* 550 F.2d 467, 472 n.5 (9th Cir. 1977). *Accord, United States* v. *Tobin,* 576 F.2d 687, 695 (5th Cir.), *cert. denied,* 439 U.S. 1051 (1978).

[3] Our own decisions subsequent to *Schneckloth* have relied repeatedly upon the *Schneckloth* test for voluntariness. *See, e.g., Lowe* v. *Commonwealth,* 218 Va. 670, 678, 239 S.E.2d 112, 117 (1977), *cert. denied,* 435 U.S. 930 (1978); *Hairston* v. *Commonwealth,* 216 Va. 387, 388, 219 S.E.2d 668, 669 (1975), *cert. denied,* 425 U.S. 937 (1976). In *Hairston,* the defendant, asked for identification by a police officer, told the officer to find it for himself. While looking in her wallet, he found illicit drugs as well. Citing *Schneckloth,* we upheld the search as consensual without commenting upon whether the

agents of the Drug Enforcement Administration); *United States* v. *Watson,* 423 U.S. 411, 424-25 (1976) (search by postal inspectors), both of which employed the *Schneckloth* standard.

 The *Schneckloth* "totality of the circumstances" test for judging the voluntariness of consent to a search, formulated in the context of a criminal case, is applicable to cases involving the imposition of civil penalties. *Stephenson Enterprises, Inc.* v. *Marshall,* 578 F.2d 1021, 1024 (5th Cir. 1978) (OSHA inspection). *Accord, United States* v. *Thriftimart, Inc.,* 429 F.2d 1006, 1010 & n. 6 (9th Cir.), *cert. denied,* 400 U.S. 926 (1970) (FDA inspection failure to give *Miranda* warnings does not vitiate consent). In its brief, E. A. Clore readily acknowledges this fact. Likewise, the circuit court recognized that the requirements for a valid consent to a search were "the same, whether [the case is] civil or criminal."[4]

 Of course, where the consent to a search is induced by fraud, trickery, or misrepresentation, the fruits of the search must be suppressed. *Gouled* v. *United States,* 255 U.S. 298, 305-06 (1921). Silence, however, cannot constitute fraud or misrepresentation unless "there is a legal or moral duty to speak or where an inquiry left unanswered would be intentionally misleading." *United States* v. *Robson,* 477 F.2d 13, 18 (9th Cir. 1973). In cases somewhat analogous to the one before us, federal courts have held that the Fourth Amendment does not bar the introduc-

---

defendant had a right to know she would be charged with an offense if the search revealed incriminating evidence.

[4] The circuit court and the parties have assumed that the exclusionary rule is applicable to cases involving the imposition of civil penalties. While the Supreme Court has applied the exclusionary rule to "quasi-criminal" forfeiture proceedings based upon violations of criminal law, *One 1958 Plymouth Sedan* v. *Pennsylvania,* 380 U.S. 693 (1965), it also has refused to apply it in a civil tax case where an illegal search by one sovereign prompted a civil suit filed by another. *United States* v. *Janis,* 428 U.S. 433 (1976). The penalty involved in this case is civil, not quasi-criminal. *See* Code § 40.1-49.4(A)(4)(a) and *United States* v. *Ward,* 448 U.S. 242, 251-54 (1980). While the Supreme Court has never applied the Fourth Amendment exclusionary rule to a civil proceeding, *Todd Shipyards Corp.* v. *Secretary of Labor,* 586 F.2d 683, 689 (9th Cir. 1978), several lower courts have concluded the exclusionary rule is applicable. *See, e.g., Savina Home Industries* v. *Secretary of Labor,* 594 F.2d 1358, 1362-63 (10th Cir. 1979), and cases cited therein. *See also Marshall* v. *Milwaukee Boiler Manufacturing Co.,* 626 F.2d 1339, 1347 (7th Cir. 1980) (reserving the issue), and *Babcock and Wilcox Co.* v. *Marshall,* 610 F.2d 1128, 1139 n. 41 (3d Cir. 1979) (reserving the issue). Since the parties have not briefed or argued this issue, we express no opinion on the dispute and have assumed, for purposes of this opinion only, that the exclusionary rule is applicable here.

tion of evidence derived by an Internal Revenue Service audit in a criminal proceeding even though the IRS agent failed to warn the one audited that the audit might result in the imposition of criminal sanctions. *United States* v. *Robson,* 477 F.2d at 17-18; *United States* v. *Stamp,* 458 F.2d 759, 775-80 (D.C. Cir. 1971), *cert. denied,* 409 U.S. 842 (1972); *United States* v. *Prudden,* 424 F.2d 1021, 1031-35 (5th Cir.), *cert. denied,* 400 U.S. 831 (1970); *United States* v. *Sclafani,* 265 F.2d 408, 415 (2d Cir.), *cert. denied,* 360 U.S. 918 (1959). Where, however, an IRS agent knowingly misleads an individual to believe he is conducting only a civil audit, when, in fact, the agent knows the audit is a part of a criminal investigation, the deception invalidates the consent obtained. *United States* v. *Tweel,* 550 F.2d 297 (5th Cir. 1977).

■ The foregoing analysis of case law leads us to conclude that the circuit court applied the wrong standard in determining the voluntariness of Clore's consent. The circuit court made no finding that Mayes had intentionally deceived or had misrepresented his purpose in conducting the investigation.[5] Instead, contrary to *Schneckloth,* the court held that the consent could not be effective unless "informed," *viz.,* unless Mayes told Lucian Clore of the potential consequences of consent. While Clore's knowledge of his right to refuse consent and of the potential consequences of his consent are relevant factors to a determination of whether his consent was voluntary, the Department was not required to show Clore's knowledge of these facts as a prerequisite to showing voluntary consent. Rather than undertaking an analysis of the voluntariness of the consent under the appropriate standard, we will reverse the judgment and remand the case to the circuit court so that it can pass upon the issue and determine whether in light of the totality of circumstances Clore's consent was voluntary.

*Reversed and remanded.*

---

[5] Indeed, the trial judge on one occasion expressly stated that he was not making such a finding and on another said he "didn't believe" the case involved "clear deception on the part of the Department."