COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Annunziata and Senior Judge Cole
Argued at Richmond, Virginia


MARVIN ALFONZA TEMPLE
                                    MEMORANDUM OPINION* BY
          Record No. 2838-95-2    JUDGE ROSEMARIE ANNUNZIATA
                                         MARCH 11, 1997
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                      Thomas N. Nance, Judge

          Patricia P. Nagel, Assistant Public Defender
          (David J. Johnson, Public Defender, on
          brief), for appellant.

          Kathleen B. Martin, Assistant Attorney
          General (James S. Gilmore, III, Attorney
          General, on brief), for appellee.


     Appellant, Marvin Temple, was convicted of possession with

intent to distribute heroin.  Contending that he was illegally

seized and that his consent to search was not voluntarily given,

appellant argues that the trial court erred in denying his motion

to suppress.  We disagree and affirm his conviction.

                                I.

     Detective R. L. Armstead of the Richmond Bureau of Police

approached appellant at a bus terminal at approximately 3:19 a.m.

 Armstead, who was not in uniform, identified himself, informed

appellant that his job was to stop the flow of drugs through the

bus station, and asked appellant whether he would cooperate.

Appellant asked, "about what," did Armstead seek his cooperation;

───────────────
     *Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

Armstead repeated his purpose and again asked if appellant would cooperate. Appellant agreed to cooperate and told Armstead his place of departure and intended destination. Armstead told appellant he was not under arrest or being detained and asked if appellant had any drugs with him. Appellant responded, "no," and Armstead asked, "do you mind if I search your bag." Appellant responded, "don't you need probable cause, a search warrant, a reasonable consent?" Armstead replied, "no, because what we do is approach people, identify ourselves and we ask for permission to search . . . just like the gentleman behind you." Appellant looked to see another detective, Ruffin, searching another individual's bags. Appellant then stated, "okay," dropped his bag and helped Armstead open it. During these events, appellant stood in an open area while Armstead's back was against a bus. Neither Armstead nor Ruffin drew a weapon, and neither placed their hands on the individual whose bag they searched. There were no other officers in the area. Armstead testified that appellant was free to leave. The search revealed approximately 434 glassine envelopes containing heroin. Appellant fled the scene, but Armstead apprehended him and placed him under arrest.

Armstead testified that he clearly explained to appellant that he sought appellant's permission to search. He testified unequivocally that appellant did not inquire only as to consent to search and that appellant phrased his question neither in the disjunctive nor the conjunctive. Accordingly, Armstead

testified, he "was replying to his answer about the three things he wanted to know about, probable cause, search warrants and reasonable consent."  Armstead stated further that appellant did not look puzzled and did not question him about the meaning of permission or consent to search.  There was no evidence that appellant was unable to understand the conversation.  Armstead testified that he had no doubt that appellant had consented to the search and that appellant did not attempt to curtail Armstead's search.

The trial court found that appellant had not been illegally seized and that he voluntarily consented to the search of his bag.  The court found that Armstead did not intend to mislead appellant by responding "no" to the question whether he needed "probable cause, a search warrant, a reasonable consent."

## II.

"[U]pon appeal from a trial court's denial of a motion to suppress the discovered evidence, the burden is upon the appellant to show, considering the evidence in a light most favorable to the Commonwealth, granting to it all inferences fairly deducible therefrom, that the denial constituted reversible error." Reynolds v. Commonwealth, 9 Va. App. 430, 436, 388 S.E.2d 659, 663 (1990).

> A "consensual encounter between police and an individual has no [F]ourth [A]mendment implications unless accompanied by such `coercion or show of force or authority by the officer . . . that would cause a person . . . reasonably to have believed that he or she was required to comply' and `not free to

leave.'"

<u>Wechsler v. Commonwealth</u>, 20 Va. App. 162, 169, 455 S.E.2d 744, 747 (1995) (citations omitted). "A voluntary police-citizen encounter becomes a seizure for Fourth Amendment purposes `only if, in view of all of the circumstances . . . a reasonable person would have believed that he was not free to leave.'" <u>Id.</u> at 170, 455 S.E.2d at 747 (citations omitted).

Two police officers occupied the scene in the present case. Neither was in uniform, neither drew a weapon, and neither, at least initially, touched the individual whom they had approached. One of the officers approached appellant. The officer identified himself, explained his presence and asked whether appellant would cooperate with him. When appellant appeared not to understand, the officer repeated himself. The officer stated no commands or directions to appellant, and the record is devoid of evidence that the officer spoke in a raised voice or in any other manner to suggest that appellant had no choice but to answer his questions. The officer positioned himself against a bus so that appellant's freedom of movement would not be restricted. That appellant's freedom of movement was not restricted is apparent from his eventual flight. The officer told appellant that he was neither under arrest nor being detained. The officer testified that if appellant had refused to cooperate, he would have been free to leave. The context of the discourse between appellant and the officer demonstrates that the

officer sought and obtained appellant's consent, first to the encounter and then to the search of appellant's bag. The record supports the trial court's finding that the encounter was not accompanied by coercion or show of force or authority by the officer such that appellant would have reasonably believed he was not free to leave. There was no "seizure" for Fourth Amendment purposes until appellant was arrested.

Appellant does not contend that he was "seized" during the initial encounter with the officer. He contends, however, that his consent to search was the product of duress and coercion and, therefore, invalid. Specifically, he argues that the officer's response to his question regarding the need for "probable cause, a search warrant, a reasonable consent" was a misrepresentation of his constitutional rights and that the officer's act of referring appellant to the ongoing search being conducted nearby, without explaining that the person had consented to the search, was coercive. Thus, he argues (1) that the continuation of the encounter beyond his consent to the search became an unlawful seizure; and (2) that his consent was an improper basis for the search. We disagree.

The test of a valid consent search is whether, considering the totality of the circumstances, it was freely and voluntarily given; the Commonwealth must demonstrate that the consent was not the product of duress or coercion. E.g., Gregory v. Commonwealth, 22 Va. App. 100, 109, 468 S.E.2d 117, 122 (1996).

We review the trial court's findings of historical fact for clear error. Ornelas v. United States, __ U.S. __, __, 116 S. Ct. 1657, 1662 (1996). Giving due weight to the inferences drawn from those facts by the trial court and by law enforcement officials, we review de novo the trial court's application of those facts to the legal standard of "voluntary consent." Id.

We assume, without deciding, that a police officer's misrepresentation of a defendant's constitutional rights would vitiate a consent to search and render a continuing encounter with the police an unlawful "seizure." However, viewing the evidence in the light most favorable to the Commonwealth, we find that the trial court's finding that no such misrepresentation occurred in the present case is not plainly wrong.[1]

Appellant complains that the officer's response to his question misled him with respect to his constitutional rights. However, appellant did not ask simply whether the officer needed his consent to search his bag. Rather, appellant asked whether the officer needed "probable cause, a search warrant, a reasonable consent," a multiple question phrased neither in the disjunctive nor in the conjunctive. To the extent appellant now focuses on the first word of the officer's response, "no," it

---

[1]Initially, we note that appellant never argued the position taken by the dissent that the officer's words, "do you mind if I search your bag," could be construed as a command rather than a question. Moreover, we disagree that the phrase "do you mind if" could reasonably be construed as the preface to a command, rather then a question.

cannot be said, based on the form of the question, that the response was either correct or incorrect. Moreover, "no" was not the thrust of the officer's response. Rather, in response to appellant's question, the officer restated the procedure he followed: "what we do is approach people, identify ourselves and we ask for permission to search." The officer clearly explained that consent or permission to search was part of the equation. His testimony supports the trial court's findings that he did not intend to mislead appellant and that appellant, in fact, understood the officer's explanation.

Appellant also argues that the officer's response misled him by suggesting that the officer was required only to ask, rather than to obtain, permission to search. Appellant failed to articulate this specific argument at the hearing on his motion to suppress. Instead, he limited his argument to the suggestion that the officer's use of the word "permission" which he later identified as a synonym for "consent" misled appellant. The trial court had no opportunity to address the issue in the context of appellant's more general complaint; therefore, appellant's argument is procedurally barred. Rule 5A:18.

We find no basis for applying the ends of justice exception, because appellant's complaint is without merit. Contrary to appellant's contention, we do not believe the officer's statement would lead a reasonable person to believe that an officer need only ask for permission without obtaining it. Furthermore, it is

clear from the dialogue between the officer and appellant that the officer sought, and took no action until he obtained, appellant's consent to the entire encounter, a statement, by conduct, that no search would ensue until permission was given by appellant. The officer explained his purpose and asked if appellant would cooperate; when appellant appeared not to understand, the officer repeated himself and again asked for appellant's cooperation. When appellant asked an ambiguous question concerning the basis for the officer's search, the officer again responded that he was seeking appellant's cooperation and permission to proceed. In sum, not only did the officer repeatedly explain that he was seeking permission to search, his conduct underscored that any further action on his part was dependent on his receiving consent.[2]

Finally, we find no merit in appellant's contention that Armstead's act of referring appellant to the search Ruffin was conducting was coercive. Ruffin was simply searching a bag; there was no show of force.

In sum, the totality of circumstances support the trial court's finding that appellant was not misled concerning his constitutional rights. Thus, we conclude his consent to the search was given voluntarily.

[2]Moreover, the fact that the officer did not search appellant immediately following the first request for consent undermines the logic of appellant's contention that he was led to believe the officer only needed to ask for consent, not obtain it.

The decision of the trial court is accordingly affirmed.

Affirmed.

Benton, J., dissenting.


Because the evidence failed to prove that Marvin Temple voluntarily consented to the search of his bags, I would reverse the trial judge's refusal to suppress the evidence.  Accordingly, I would reverse the conviction.

The principles concerning voluntary consent are well established.

> When [the Commonwealth] seeks to rely upon consent to justify the lawfulness of a search, [the Commonwealth] has the burden of proving that the consent was, in fact, freely and voluntarily given.  This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority.

Bumper v. North Carolina, 391 U.S. 543, 548 (1968) (footnotes omitted).  When police conduct causes a citizen to acquiesce to a claim of lawful authority, any search that follows is "the result of duress or coercion, express or implied" and cannot be said to be based upon consent voluntarily given.  Schneckloth v. Bustamonte, 412 U.S. 218, 248 (1973).  Furthermore, voluntary consent has not been obtained "where the consent to a search is induced by fraud, trickery, or misrepresentation."  Commonwealth v. E.A. Clore Sons, Inc., 222 Va. 543, 548, 281 S.E.2d 901, 904 (1981).

The undisputed evidence proved that the police officer interrupted Marvin Temple as Temple walked to board a Greyhound bus at the terminal.  The officer told Temple that he wanted to talk to Temple because he was investigating the flow of illegal

narcotics.  He asked if Temple "would . . . mind cooperating in this matter."  After Temple answered the officer's inquiry concerning his travel, the officer asked Temple if he had any narcotics on his person or bag.  When Temple said, "no," the officer asked him if he would mind if the officer searched his person or the contents of his bag.

The Commonwealth relied upon the officer's statement of the word "mind" to indicate that he requested consent.  However, the word "mind" has many shades of meaning, including to "give heed to attentively in order to obey."  Webster's Third New International Dictionary, 1436-37 (1981).  That word does not unambiguously convey the same meaning as the words "give consent" or "give permission."  Indeed, the phrase, "Would you mind, while I search," is not a request for consent to search or a request for permission to search.  Used in that context, it is arguable whether "would you mind" is an inquiry or a command.  Moreover, Temple's response to the officer's "question" reveals that Temple probably interpreted it as a command.  If Temple felt that he could refuse the search, he likely would not have asked whether the officer needed "probable cause, a search warrant, a reasonable consent."

The officer did not ask Temple for "permission" to search and did not ask Temple for his "consent" to a search.  The evidence shows that the words the officer used did not plainly convey a request for permission to conduct a consent search.  The

officer's failure either to inform Temple that he could refuse the search or to plainly ask for consent or permission to search negate the suggestion that the consent was voluntary.

After the officer informed Temple that he wanted to search Temple's bag and his person, Temple responded, "don't you need probable cause, a search warrant, a reasonable consent?" Despite the majority's assertion to the contrary, Temple's question was not ambiguous. Furthermore, the record clearly indicates that the officer understood Temple's inquiry. The officer did not testify that he did not understand the question or that he misinterpreted the question. Moreover, no evidence supports a finding that the answer, "no," was anything but incorrect. Therefore, the trial judge's finding that the officer's response was not a misrepresentation, and the majority's decision to uphold that finding, have no evidentiary support in this record.

Whatever the officer may have intended, he misstated his authority to search Temple. When he responded "no" to Temple's inquiry, he claimed an authority to search that is not legally cognizable. That response negated Temple's right to resist.

> When a law enforcement officer claims authority to search . . . , he announces in effect that the [person] has no right to resist the search. The situation is instinct with coercion - albeit colorably lawful coercion. Where there is coercion there cannot be consent.

Bumper, 391 U.S. at 550.

The officer's response affirmatively misrepresented his

- 12 -

authority and negated any consent. Consent is not voluntary when given to a police officer who falsely claims to have lawful authority. <u>See</u> <u>Deer v. Commonwealth</u>, 17 Va. App. 730, 735, 441 S.E.2d 33, 36 (1994). "A significant misrepresentation, by commission or omission, of the constitutional choices available to [Temple] is a strong circumstance, in the larger totality of circumstances, militating against the voluntary quality of [Temple's] consent." <u>Titow v. State</u>, 542 A.2d 397, 399 (Md. Ct. Spec. App. 1988).

After minimizing the officer's unequivocal misrepresentation, the majority further concludes that the officer's subsequent statement to Temple "clearly explained" that the officer sought to obtain Temple's permission to search. The officer's precise words belie the assertion. After the officer responded negatively to Temple's inquiry, the officer stated "we approach people, identify ourselves, and ask for permission to search . . . just like the gentleman behind you." When Temple turned in response to the latter comment, he saw another police officer searching a man. The officer testified:

    Q  And behind you was Detective Ruffin and
       she was searching an individual?

    A  Yes.

    Q  That was readily apparent that you were
       making reference that that detective was
       searching?

    A  Yeah, I was replying to his answer about
       the three things he wanted to know about,
       probable cause, search warrants and

– 13 –

reasonable consent.[3]

Temple obviously could not have known the basis upon which Detective Ruffin was searching the other man. Neither the officer nor Detective Ruffin informed Temple that the man being searched had consented to the search. Moreover, at no time did the officer tell Temple that he could not conduct a lawful search of Temple's bags or his person unless Temple consented or gave permission for the search. The officer's negative response to Temple's inquiry required as much. The officer's further "explanation" merely informed Temple that the police only needed to "approach people, identify [them]selves, and ask for permission to search." In summary, the officer denied that he needed a search warrant, probable cause, or consent to search Temple and implied that his authority as a police officer existed after he formally asked permission. When the officer referred to the person that Detective Ruffin was searching, he reinforced the point that his authority as a police officer was all that was needed to make a search. He failed to tell Temple that before making a search he had to "obtain" permission or consent from Temple. The officer "convey[ed] a message that compliance with [his] requests [was] required." <u>Florida v. Bostick</u>, 501 U.S. 429, 435 (1991).

Thus, Temple's response was made "in submission to authority

_____

[3]This testimony clearly establishes, if there could have been any doubt, that the officer, unlike the majority, did not perceive Temple's question to be ambiguous.

- 14 -

rather than as an . . . intentional waiver of a constitutional right."  Johnson v. United States, 333 U.S. 10, 13 (1948); see also Bumper, 391 U.S. at 548-49.  "'Orderly submission to law-enforcement officers who, in effect, represented to the defendant that they had the authority to . . . search . . . , against his will if necessary, was not such consent as constituted an . . . intentional and voluntary waiver by the defendant of his fundamental rights under the Fourth Amendment to the Constitution.'"  Bumper, 391 U.S. at 549 n.14 (citation omitted).  Merely "responding to 'coercion under the color of lawful authority' that had no legal basis" does not give rise to a voluntary consent.  Deer, 17 Va. App. at 736, 441 S.E.2d at 37.

The majority asserts that Temple's argument that the officer's response "suggest[ed] that the officer was required only to ask, rather than to obtain, permission to search" is barred from consideration on appeal.  This is so, the majority asserts, because Temple failed to make such an argument before the trial court.  I disagree.

The argument made by Temple's counsel covers many pages of the transcript.  However, the following portion clearly reveals that Temple's counsel made the judge aware that the officer's actions and words conveyed that he did not need to obtain consent:

> My client was asking the question, Judge, and the officer answered that question, and as a result of the answer the officer gave -- as a result of the direct answer that the officer gave and on top of that, Your Honor,

> the fact that he pointed to someone else
> being searched, he's saying no, we need your
> permission, he doesn't explain what was going
> on over there, he just pointed to another
> individual whose bag was being searched.  He
> didn't explain what was -- this officer isn't
> out there explaining each and every item,
> this individual's constitutional rights, and
> when he can decline a search and when he has
> to put up with a search, things of that
> nature he simply says no, we need your
> permission and he points to someone else
> being searched.  What is this individual's
> option at that point, he's just asked whether
> the officer needs consent to search, the
> officer says no, I need your permission, he
> points to someone who is being searched
> . . . .

(Emphasis added).  This argument adequately made the judge aware that the implications of the officer's misleading answer, combined with his pointing to another search in progress, reasonably conveyed that Temple's consent was not required.

The officer's negative statement in response to Temple's question and his explanation did not induce a voluntary consent.  Indeed, the officer's example of a search in progress was bald coercion.  "Once [Temple] was led down the garden path, persuaded that the search . . . was [authorized], his subsequent consent must be viewed as merely an accommodation to the authorities." United States v. Ricciardelli, 998 F.2d 8, 14 (1st Cir. 1993).  "'One who . . . acquiesces in obedience to such a request, no matter by what language used in such acquiescence, is but showing a regard for the supremacy of the law.'"  Bumper, 391 U.S. at 549 n.14 (citation omitted).  When, as here, the police use a statement "[t]hat was not an accurate description of their

constitutional prerogative" and thereby induce a person to allow a search, the evidence fails to establish a voluntary consent. Titow, 542 A.2d at 398.

The trial judge's finding that the officer's incorrect response, "no," and the officer's further conduct in pointing to an ongoing search, taken together, were not a misrepresentation of the law and the officer's authority was plainly wrong. Because the officer misrepresented his authority and used that misrepresentation, along with other conduct, to induce Temple to acquiesce, the search was unlawful and "the fruits of the search must be suppressed." E.A. Clore Sons, Inc., 222 Va. at 548, 281 S.E.2d at 904.